| | |
|---|---|
| 1 | METINER G. KIMEL – WSBA 21280<br>KIMEL LAW OFFICES |
| 2 | 1115 West Lincoln Ave., Suite 105<br>Yakima, WA 98902 |
| 3 | Telephone: (509) 452-1115<br>Facsimile: (509) 452-1116 |
| 4 | |
| 5 | Counsel for the Debtor and Debtor in Possession |

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| In re | Case No. 14-00843-FLK11 |
| River-Bluff Enterprises, Inc. | **DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION** |
| Debtor and<br>Debtor-in-Possession. | DATE:<br>TIME:<br>PLACE: |

River-Bluff Enterprises, Inc., the Debtor and Debtor in possession in the above-referenced case, now proposes the following Chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code ("the Plan"). This Plan provides for the repayment of all allowed claims in full, unless the creditor has agreed otherwise.

**I.**

**DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION**

**A.    DEFINITIONS**

The following terms shall have the meanings stated for purposes of the Plan. Terms not defined in this Article or elsewhere in the Plan shall have the meanings defined in the Bankruptcy Code, or, for any term not defined in the Bankruptcy Code, the meaning attributed to such term through custom or usage. Certain terms are, for convenience and ease of reference only, capitalized throughout the Plan. The capitalization of or failure to capitalize any term, however,

-1-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 1 of 47

shall not, unless the context otherwise requires, be of any significance to a determination of the meaning of any term.  Whenever the context requires, the singular shall include the plural and masculine shall include the feminine.

1.      **"142 N. 9th Street"** means that certain commercial real property, including the high school located thereon,  at 142 N. 9th Street, Modesto, California as further described in the Key Bank Deed of Trust, defined *infra*.

2.      **"Administrative Claim"** means a Claim for costs and expenses of administration allowed under Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(1) of the Bankruptcy Code, including, without limitation:  (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

3.      **"Allowed Amount"** means the amount of any Claim against the Debtor determined in accordance with Sections 502 and 506(a) of the Bankruptcy Code and any other applicable section of the Bankruptcy Code, and recognized by the Debtor as valid, allowed by this Plan, or allowed by Final Order of the Court.

4.      **"Allowed Claim"** means a Claim against the Debtor to the extent that -

a)      a Proof of Claim was timely filed; or is deemed filed under applicable law or by reason of an order of the Bankruptcy Court; and

b)      the Debtor or Reorganized Debtor does not file an objection within a time fixed by the Bankruptcy Court and the Claim is not otherwise a Disputed Claim (but only to the extent that such Claim is not a Disputed Claim); (2) the Claim is allowed (and only to the extent allowed) by a Final Order; or (3) the Claim is allowed under this Plan.

5.      **"Allowed Class __ Claim"** means an Allowed Claim in the particular Class described.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
**DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
49419231.1

1/20/2015 8:22 AM

6.        **"Allowed Priority Claim"** means an Allowed Claim entitled to priority

pursuant to Sections 507(a)(3), (4) or (6) of the Bankruptcy Code.

7.        **"Allowed Secured Claim"** means an Allowed Claim secured by a lien, security

interest or other charge against property in which the estate has an interest, or which is subject to

set-off under Section 553 of the Bankruptcy Code, (a) to the extent of the value, determined in

accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such

Secured Claim in the estate's interest in such property, or to the extent of the amount subject to any

set-off, as the case may be, or (b) where the holder of the Claim has made an election under

Section 1111(b) of the Bankruptcy Code, to the extent of the amount of the Claim.

8.        **"Alpine"** means Alpine Townhouse Apartments, LLC, a California limited

liability company owned by Byron Haney and Rose Haney, Roger Haney and Marleta Haney,

Marcus Haney and Jeanette Haney, and Eric and Sue Layman, which is the holder claim in the

Scheduled amount of $2,303,637.00 secured by a junior lien recorded with the Stanislaus County

Recorder as Doc – 2013-0041669-00 on May 14 2013, which encumbers substantially all of the

Debtor's California real property.

9.        **"Approval Date"** means the date on which an order approving the Debtor's

Disclosure Statement, or an amended version thereof, is entered by the clerk on the Court's docket.

10.       **"Assets"** The term Assets includes and means any property of the Estate and

expressly includes all rights, titles and interests vested in the Debtor on the Petition Date, excluding

property excluded by Bankruptcy Code § 541 from the Estate.

11.       **Available Cash"** means all Cash of the Estate, at any given time, available to be

distributed to the holders of Allowed Claims less (a) the amount of cash to be reserved in

accordance with the Budgets attached hereto currently estimated to be necessary to fund continued

operations of the Debtor and to adequately fund the administration of this Plan and the Chapter 11

Case on and after the Effective Date and (b) the amount of Cash deposited into the Disputed

Claims Reserve; provided, however, that Available Cash shall not include collateral security or any

proceeds of collateral securing any Allowed Secured Claims.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
**DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION**
49419231.1

1/20/2015 8:22 AM

14-00483-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 3 of 47

**12.** **"Bankruptcy Code"** or **"Code"** means Title 11 of the United States Code, as now in effect or hereafter amended. All citations in this Plan to section numbers are to the Code unless otherwise expressly indicated.

**13.** **"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Eastern District of Washington or, if such court ceases to exercise jurisdiction over the Reorganization Case, such court or adjunct thereof that exercises jurisdiction over the Reorganization Case in lieu of the United States Bankruptcy Court for the Eastern District of Washington.

**14.** **"Ballot"** The term Ballot shall mean the form distributed to holders of Claims and Interests impaired under the Plan as defined in section 1124 of the Code for purposes of the holders of such Claims and Interests indicating their respective acceptance or rejection of the Plan along with the amount and class of their respective Claims or Interests.

**15.** **"Bankruptcy Rules"** or **"Rules"** means, collectively (a) the Federal Rules of Bankruptcy Procedure and (b) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Washington, as now in effect or hereafter amended.

**16.** **"Bar Date"** means the last date for filing Claims, which was 60 days after service of the notice thereof on creditors.

**17.** **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**18.** **"Case"** means the within Chapter 11 case, known as In re River-Bluff Enterprises, Inc., Case No. 14-00483-FLK11, pending before the United States Bankruptcy Court, Eastern District of Washington.

**19.** **"Cash"** means cash and cash equivalents.

**20.** **"Causes Of Action"** means all claims, demands, and causes of action owned by the Debtor as of the Petition Date or acquired post-petition by the Debtor, including, without limitation, all claims and actions under Chapter 5 of the Bankruptcy Code, for the avoidance and

-4-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
**DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION**
49419231.1

1/20/2015 8:22 AM

14-00483-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 4 of 47

recovery of preferential or fraudulent transfers or post-petition transfers not approved by the Bankruptcy Court.

    **21.**    **"Chase"** means JP Morgan Chase Bank, N.A., the holder of two separate Secured Claims secured by the Plaza Apartments for one claim and by Sierra Manor for the other claim.

    **22.**    **"Chase Plaza Apartments Secured Claim"** means the secured claim of JP Morgan Chase Bank, N.A. in the Scheduled amount of $1,209,240.00.

    **23.**    **"Chase Plaza Apartments Loan"** means that certain loan which is the basis for the Chase Plaza Apartments Secured Claim.

    **24.**    **"Chase Plaza Apartments Security Documents"** means those loan documents which evidence Chase's security interest in the Plaza Apartments and related collateral.

    **25.**    **"Chase Sierra Manor Secured Claim"** means the secured claim of JP Morgan Chase Bank, N.A. in the Scheduled amount of $1,382,281.00.

    **26.**    **"Chase Sierra Manor Loan"** means that certain loan which is the basis for the Chase Sierra Manor Secured Claim.

    **27.**    **"Chase Sierra Manor Security Documents"** means those loan documents which evidence Chase's security interest in Sierra Manor and related collateral.

    **28.**    **"Claim"** means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured; or, a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is an equitable remedy or is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

    **29.**    **"Claimants"** or **"Creditors"** means persons or entities holding Allowed Claims.

    **30.**    **"Class"** means any grouping into which Allowed Claims and Interests are classified pursuant to Article III of the Plan.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
**DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION**
49419231.1

1/20/2015 8:22 AM

14-00483-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 5 of 47

31. **"Code"** means and refers to title 11, United States Code, 11 U.S.C. § 101, et seq.

32. **"Confirmation"** means the entry by the Bankruptcy Court of the Confirmation Order.

33. **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on the Court's docket.

34. **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan under Section 1129 of the Bankruptcy Code.

35. **"Contested"** means a Claim against the Debtor (a) that is listed in the Debtor's schedules of liabilities as disputed, contingent, or unliquidated, (b) that is listed in the Debtor's schedules of liabilities as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent the proof of claim exceeds the scheduled amount, (c) that is not listed in the Debtor's Schedules of liabilities but as to which a proof of claim has been filed with the Bankruptcy Court, or (d) as to which an objection to claim, adversary proceeding or other lawsuit has been filed against any Creditor by the Estate on or before the Objection Deadline set by the Bankruptcy Court.

36. **"Creditor"** means any person or entity holding an Allowed Claim or Claims against the Debtor.

37. **"Debtor"** means River-Bluff Enterprises, Inc., a California corporation.

38. **"Debtor in Possession"** means the Debtor, when acting in the capacity of the representative of the Estate in the Case.

39. **"Disallowed Claim"** means any Claim (or any portion thereof) against the Debtor which has been disallowed pursuant to the provisions of the Code, including, without limitation, any Claim disallowed pursuant to § 502(e) of the Code.

40. **"Disclosure Statement"** means the Disclosure Statement to Accompany Debtor's Chapter 11 Plan prepared by the Debtor as required by Section 1125 of the Bankruptcy Code and approved by an Order of the Bankruptcy Court.

-6-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00483-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 6 of 47

41.     **"Disbursing Agent"** means the Debtor, or the Reorganized Debtor acting as agent on behalf of the Debtor.

42.     **"Disputed Claim"** means a Claim as to which a proof of claim has been Filed or deemed Filed under applicable law, as to which an objection has been or may be timely Filed by the Debtor or Reorganized Debtor and which objection, if timely Filed, has not been withdrawn on or before any date fixed for Filing such objections by the Plan or Order of the Bankruptcy Court and has not been overruled or denied by a Final Order. Prior to the time that an objection has been or may be timely Filed, for the purposes of this Plan a Claim shall be considered a Disputed Claim in its entirety if: (i) the amount of the Claim specified in the proof of claim exceeds the amount of any corresponding Claim scheduled by the Debtor in its Schedules of Assets and Liabilities; (ii) any corresponding Claim scheduled by the Debtor in its Schedules of Assets and Liabilities has been scheduled as disputed, contingent, or unliquidated, irrespective of the amount scheduled; or (iii) no corresponding Claim has been scheduled by the Debtor in its Schedules of Assets and Liabilities. Notwithstanding the foregoing, a Claim is not a Disputed Claim if it is an Allowed Claim in this Plan.

43.     **"Distribution"** means the consideration paid or transferred to the holder of a Claim or Interest in satisfaction of such Claim or Interest in accordance with the Plan.

44.     **"Effective Date"** means a Business Day, selected by the Debtor that is no later than sixty (60) days after the Confirmation Date.

45.     **"Equity Security"** or **"Interest"** means the shares of stock evidencing an ownership interest in the Debtor.

46.     **"Equity Security Holder"** means a holder of an Equity Security or Equity Interest in the Debtor.

47.     **"Estate"** means the estate created pursuant to section 541 of the Bankruptcy Code upon the commencement of in the Chapter 11 case for the Debtor under Section 541 of the Bankruptcy Code.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
**DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
49419231.1

1/20/2015 8:22 AM

14-00483-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 7 of 47

48.     **"Estimated Amount"** means the maximum amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim (or Class of Claims), against the Debtor which is contingent, unliquidated or disputed, for the purpose of: (a) allowance under § 502(c) of the Bankruptcy Code; (b) assisting the Bankruptcy Court in making the findings required for Confirmation of this Plan pursuant to §§ 1129(a)(7)(A)(ii) and (a)(11) and, if necessary, §§ 1129(b)(1) and (2) of the Code; or (c) temporarily allowing a Contested Claim or Contested Interest solely for the purpose of accepting or rejecting the Plan pursuant to Bankruptcy Rule 3018(a).

49.     **"File"** or **"Filed"** means filed with the Bankruptcy Court in the Case.

50.     **"Final Order"** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Case, which has not been reversed, stayed, modified or amended, and as to which (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal that has been or may be taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

51.     **"Guarantors"** means collectively Byron and Rose Haney, Eric and Sue Layman, Marcus and Jeanette Haney, and Roger and Marleta Haney, each who signed personal guarantees on certain secured debts.

52.     **"Insider"** means a Person having a relationship with the Debtor within the meaning of Code § 101(31).

53.     **"Key Bank"** means US Bank National Association, as Trustee for the Registered Holders of WAMU Commercial Mortgage Securities Trust 2007-SLW, Commercial Mortgage Pass-Through Certificates, Series 2007-3, it successors and assigns, with Key Bank, National Association as its Special and Master Servicer and Berkadia Commercial Mortgage, LLC as primary servicer, the holder of an Allowed Secured Claim secured by the Key Bank Security Documents and holder of the Key Bank Loan Documents.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
**DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
49419231.1

1/20/2015 8:22 AM

54. **"Key Bank Loan"** means Loan No. 625955681, under which there is an outstanding balance as of December 29, 2014 of $1,335,898.50.

55. **"Key Bank Loan Documents"** means all existing and future loan agreements, promissory notes, guaranty agreements, pledges, security agreements, assignment of leases and rents, mortgages, deeds of trust, forbearance agreements, and all other existing or future documents evidencing, securing or executed in connection with the Key Bank Loan relating to Debtor or its affiliates with Washington Mutual Bank, Key Bank or any of their affiliates or their assigns, which are now held, serviced, or administered by Key Bank, together with all other existing and future documents that modify, amend, extend, replace, or otherwise affect any of the foregoing documents, and includes without limitation the Key Bank Note, Key Bank Deed of Trust and Key Bank Security Documents.

56. **"Key Bank Note"** means that certain promissory note executed in connection with the Key Bank Loan between the Debtor as maker and Washington Mutual dated December 13, 2006 in principal amount of $1,750,000 together with all its modifications, amendments, extensions, replacements, allonges, or assignments thereto.

57. **"Key Bank Secured Claim"** means the secured claim of Key Bank in the fully allowed amount of $1,335,898.50 as of December 29, 2014, which is fully Allowed Secured Claim under the terms of the Plan and not subject to any claim, defense, offset, setoff or recoupment of the Debtor or Reorganized Debtor under this Plan and shall not be subject to reconsideration under 11 U.S.C. 502(j).

58. **"Key Bank Security Documents"** means those loan documents which evidence Key Bank's security interest in 142 N. 9th Street and related collateral described in the loan documents securing the Key Bank Loan, including but not limited to that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated December 13, 2006 signed by Debtor in favor of Washington Mutual Bank and recorded December 22, 2006 in the Stanislaus County, California Recorders Office (the **"Key Bank Deed of Trust"**)

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 9 of 47

59. **"Lien"** means, with respect to any Asset or property of the Debtor, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind affecting such Asset or property to the extent enforceable under law.

60. **"Order"** means an order or judgment of the Bankruptcy Court as entered on the docket.

61. **"Management"** means Roger Haney, Byron Haney, and Eric Layman in their capacity as officers, directors, and shareholders of the Debtor.

62. **"Medical Building"** means that certain real property, which includes Lots 1, 2, 3, 4, 5, and 6, portions of Lot 8, and Lots 9 and 10, all in Block 55 of the Murray Addition to the City of Ellensburg, County of Kittitas, State of Washington, as per plat thereof recorded in Book 1 of Plats, page 15, on which a three-story, 34541 square foot office building and improvements are located.  The street addresses for the property are 100 E. Jackson St., and 705 and 707 S. Pine Street,, Ellensburg, WA 98926.

63. **"Parking Lot"** means that certain real property, which includes Lots 11 and 12 in Block 55 of the Murray Addition to the City of Ellensburg, County of Kittitas, State of Washington, as per plat thereof recorded in Book 1 of Plats, page 15, which is located adjacent to the Medical Building.

64. **"Person"** means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, government or any political subdivision, governmental unit (as defined in the Bankruptcy Code) or official committee appointed by the United States Trustee.

65. **"Petition"** means the voluntary petition filed by the Debtor to initiate the Case.

66. **"Petition Date"** means March 11, 2014, the date that the Petition was filed.

67. **"Plan"** means the Debtor's Chapter 11 Plan of Reorganization in this Case and all exhibits and schedules annexed thereto or referred to therein, as the same may be amended, modified, or supplemented from time to time, and any amendment or modification thereof.

-10-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 10 of 47

**68.** **"Plaza Apartments"** means that certain real property improved with a 30 unit apartment complex located at 1317 Colorado Ave., Turlock, California.

**69.** **"Pro Rata"** means the proportional amount of any one Claim or Equity Interest in a Class or a group of claims to the aggregate amount of all Claims or Equity Interests in the same Class or group, including Disputed Claims until disallowed.

**70.** **"Proof of Claim"** means a statement under oath filed in the Case by a creditor in which the creditor sets forth the amount owed to the creditor and presents sufficient detail to identify the basis of the Claim in accordance with Rule 3001.

**71.** **"Priority Claim"** means an Unsecured Claim given priority under Section 507(a) of the Bankruptcy Code.

**72.** **"Priority Tax Claim"** means an Allowed Claim for an amount entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**73.** **"Proponent"** means the Debtor.

**74.** **"Reorganized Debtor"** means the Debtor, on and after the Confirmation Date, at which time it shall assume all of the rights and obligations of the Debtor together with title to and control of the Debtor's assets and liabilities upon Confirmation of the Plan, as such rights, obligations, assets and liabilities are modified in this Plan.

**75.** **"Scheduled"** means as set forth on the Schedules of Asset and Liabilities on file with the Bankruptcy Court.

**76.** **"Schedules of Assets and Liabilities"** means the Schedules of Assets and Liabilities filed by the Debtor with the Bankruptcy Court, as the same have been or may be amended from time to time prior to the Effective Date.

**77.** **"Secured Claim"** means any Claim secured by a lien, security interest or other charge against property in which the estate has an interest, or which is subject to set-off under Section 553 of the Bankruptcy Code, (a) to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such Secured Claim in the estate's interest in such property, or to the extent of the amount subject to any set-off, as the case

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
**DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 11 of 47

may be, or (b) where the holder of the Claim has made an election under Section 1111(b) of the Bankruptcy Code, to the extent of the amount of the Claim.

78.     **"Secured Creditor"** shall mean the holder of an Allowed Secured Claim.

79.     **"Sierra Manor"** means that certain real property improved by a 37 unit apartment complex and coin operated laundry located at 6500 Jackson Avenue, Riverbank, California.

80.     **"Taxes"** means all taxes lawfully levied or assessed by any taxing authority which are lawfully owed by Debtor or the Estate which are (i) specified in Code section 507(a)(7), (ii) unsecured Claims of the Estate for taxes, or (iii) taxes incurred post-petition by the Debtor prior to the date of the Confirmation Order.

81.      **"Unclassified Claims"** means the Allowed Amount of: (i) all administrative expenses of the Debtor's Chapter 11 Case, allowed pursuant to Section 503(b) of the Bankruptcy Code, and (ii) all allowed, unsecured Claims entitled to priority pursuant to Section 507(a)(1), (2), and (8) of the Bankruptcy Code.

82.     **"Unsecured Claims"** means the Allowed Amounts of those Claims against the Debtor for which there are no assets of the Debtor serving as security, but not including any Priority Claims.

83.     **"Unsecured Creditors"** means Creditors holding allowed, unsecured Claims against the Debtor for which there are no assets of the Debtor serving as a security, but not including priority Claims.

84.     **"U.S. Bank"** means U.S. Bank National Association, the holder of an Allowed Secured Claim secured by Medical Building and guaranteed by the Guarantors.

85.     **"U.S. Bank Loan"** means the loan evidenced by that certain Construction Loan Agreement between U.S. Bank and the Debtor dated October 30, 2007, as subsequently modified by the U.S. Bank and the Debtor prior to the filing of the Petition, with an original loan commitment amount of $5,225,000.00, as evidenced by the U.S. Bank Note.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
**DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION**
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11     Doc 260     Filed 01/20/15     Entered 01/20/15 11:00:55     Pg 12 of 47

86. **"U.S. Bank Note"** means that certain Installment or Single Payment Note with an original stated principal balance of $5,225,000 dated October 30, 2007, and originally due and payable on April 1, 2009, as subsequently modified by the U.S. Bank and the Debtor prior to the filing of the Petition.

87. **"U.S. Bank Secured Claim"** means the secured claim of U.S. Bank in the claimed amount of $5,439,995.55 as of the Petition Date, which amount has increased postpetition.

88. **"U.S. Bank Security Documents"** means those loan documents which evidence U.S. Bank's security interest in the Medical Building Street and related collateral, including that certain Washington Deed of Trust, Security Agreement and Assignment of Rents and Leases recorded with the Kittitas County Auditor as document 200711210006 on November 21, 2007, and that UCC Financing Statement number 12-7311752241 filed with the California Secretary of State on May 2, 2012.

Any term used in this Document that is not defined in either in Article III, or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

## II.

## TREATMENT OF ADMINISTRATIVE EXPENSE

## AND PRIORITY TAXES

A. **Administrative Expense Claims.**

Except to the extent the Proponent and the holder of an Allowed Administrative Expense Claim agree to a different treatment, the Disbursing Agent shall pay to each holder of an Allowed Administrative Expense Claim Cash from Available Cash in an amount equal to such Allowed Administrative Expense Claim on the later of (a) the Effective Date and (b) the fifteenth Business Day of the first month following the month in which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon after such dates as is practicable; provided, however, that Allowed Administrative Expense Claims representing obligations incurred in the ordinary course of business of the Debtor shall be paid in full in accordance with the terms

-13-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 13 of 47

and conditions of the particular transactions and any applicable agreements. United States Trustee quarterly fees will be paid post-confirmation in accordance with Title 28 U.S.C. § 1930(a)(6).

**B.      Priority Tax Claims.**

Except to the extent that the Proponent and the holder of an Allowed Priority Tax Claim agree to a different treatment, Disbursing Agent shall pay to each holder of an Allowed Priority Tax Claim Cash from Available Cash in an amount equal to such Allowed Priority Tax Claim on the later of (a) the Effective Date and (b) the fifteenth Business Day of the first month following the month in which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon after such dates as is practicable.

**III.**

**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

Claims, other than Administrative Expense Claims, Priority Tax Claims, and Equity Interests are classified for all purposes, including voting, confirmation, and distribution pursuant to this Plan, as follows:

| | |
|---|---|
| Class 1 | Allowed Secured Claims for Property Taxes |
| Class 2 | Allowed Unsecured Priority Claims |
| Class 3 | Allowed Secured Claim of Key Bank |
| Class 4 | Allowed Secured Claim of Chase (Plaza Apartments) |
| Class 5 | Allowed Secured Claim of Chase (Sierra Manor) |
| Class 6 | Allowed Secured Claim of U.S. Bank |
| Class 7 | Allowed Secured Claim of Alpine |
| Class 8 | Allowed General Unsecured Claims |
| Class 9 | Allowed Unsecured Claim of Alpine |
| Class 10 | Allowed Unsecured Claim of Marcus |

-14-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419331.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 14 of 47

| | Haney |
|---|---|
| Class 11 | Shareholder Interests |

### III.

### TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

1.      **Class 1 Claims (Allowed Secured Claim for Property Taxes).**

Class 1 consists of any and all property taxes. Class 1 is impaired under the Plan. The Plan provides the following treatment for holders of Allowed Claim 1 Claims: The Debtor believes that there are no current property taxes owed for any of its real properties. The Holders of the Allowed Class 1 Claims shall retain its liens against the current real properties securing those liens until the Allowed Class 1 Claim has been paid in full.

2.      **Class 2 Claims (Unsecured Priority Claims).**

Class 2 consists of any and all Priority claims, other than claims of the kind specified in Sections 507(a)(1), 507(a)(2) or 507(a)(8) of the Bankruptcy Code. Holders of Class 2 Claims are unimpaired under the Plan. Debtor believes that there are no claims which would qualify as Class 2 Claims, and to date there have been no Claims filed as an unsecured priority claim. In the event there are any Class 2 Claims, then on or before the Effective Date, all Allowed Class 2 Claims will be paid in full, in Cash.

| Class 2 | Description | Impairment | Treatment |
|---|---|---|---|
| None | Claims of the kind specified in Sections 507(a)(1), 507(a)(2) or 507(a)(8) of the Bankruptcy Code | Unimpaired | Payment in Full on the Effective Date of the Plan |

Debtor believes that there are no unsecured priority claims that would qualify as Allowed Class 2 Claims.

3.      **Class 3 Claims (the Allowed Secured Claim of Key Bank).**

(1)      <u>Impairment And Voting.</u>

-15-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
49419331.1

1/20/2015 8:22 AM

14-00843-FLK11     Doc 260     Filed 01/20/15     Entered 01/20/15 11:00:55     Pg 15 of 47

The Class 3 is impaired under this Plan. The holder of an Allowed Claim in Class 3 is entitled to vote to accept or reject this Plan.

(2) Allowance and Distribution.

Key Bank's Allowed Class 3 Claim is an Allowed Secured Claim. Key Bank shall have an Allowed Secured Claim in the total amount of $1,335,898.50. The Key Bank collateral was valued at $1,750,000.00 in the Schedules.

On the Effective Date, the Key Bank Loan Documents shall be modified to provide that the Reorganized Debtor shall have the right, only once, during the 24 month period commencing with the Confirmation Date, to defer one of the required monthly payments as provided for under the Key Bank Loan Documents for a period of nine months (the "**Payment Holiday**"), but the Debtor is not required to exercise such Payment Holiday  The deferral may not exceed nine months.  At the end of the deferral period, Debtor shall be obligated to cure the missed payment and shall pay the payment amount plus interest accrued at the non-default interest rate.

Debtor shall be required to give the Holder of the Allowed Class 3 Claim ten (10) days written notice prior to exercising its right to the Payment Holiday.

(3) All Other Rights Of Class 3 Claims Unchanged by the Plan.

Notwithstanding anything in the Disclosure Statement, Plan, or the Confirmation Order, or any attachments, supplements, schedules, exhibits or additions to any of the proceeding (collectively the "**Plan Related Documents**"), the Debtor hereby reaffirms and ratifies all Key Bank Loan Documents, as modified by Paragraph 3(2) of Class 3 in Debtor's Second Amended Plan above.  To the extent there is a discrepancy between the Plan Related Documents and this Paragraph 3(3), Paragraph 3(3) controls.  The Debtor hereby acknowledges and agrees that Key Bank is the holder and servicer of the Class 3 Claims which shall be deemed fully allowed secured claims in the outstanding amount of $1,335,898.50 as of December 29, 2014, and that such amounts are not subject to deduction, demand, claim, defense or setoff, offset, recoupment  or reconsideration of any kind.  Key Bank may add its legal fees, costs, expenses and other advances it incurs in this case to the amounts owed under the Key Bank Loan Documents and Debtor shall

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

reimburse Key Bank for such expenses without further court order. For the avoidance of doubt: (i) all liens provided under the Key Bank Loan Documents shall be retained, ratified, reaffirmed and be unaffected by the Case; (ii) the Debtor or its affiliates, including any guarantors of the Key Bank Loan or Key Bank Note shall not be discharged from any liability under the Key Bank Loan Documents by the Plan Related Documents; (iii) after occurrence of an event of default under the Key Bank Loan Documents (excluding the current Case), Key Bank or its agents may exercise any and all rights and remedies against the Debtor or its affiliates or any guarantors of the Key Bank Loan or Key Bank Note as are available at law or in equity without further order from the Bankruptcy Court including, without limitation acceleration, default interest, penalties, costs, damages and other rights allowed under the Key Bank Loan Documents; (iv) the Reorganized Debtor shall continue to bound by and to comply with all terms of the Key Bank Loan Documents, including, but not limited to the receipt of timely payments from the Reorganized Debtor, except as only modified by the Payment Holiday; and (v) the Debtor does not have any claims or causes of action against Key Bank or its predecessors relating in any way to the Key Bank Loan Documents as of the Confirmation Date of this Plan, and therefore: Debtor hereby releases and forever discharges Key Bank and Key Bank's agents, principals, successors, assigns, employees, officers, directors, and attorneys, and each of them, of and from any and all claims, demands, damages, suits, rights, defenses, offsets, or causes of action of every kind and nature that Debtor has or may have as of the Confirmation Date, whether known or unknown, contingent or matured, foreseen or unforeseen, asserted or unasserted, including, but not limited to, all claims for compensatory damages, general damages, special damages, consequential damages, incidental damages, punitive damages, attorney fees, and equitable relief. In furtherance of the releases set forth above, Debtor acknowledges and waives the benefits of California Civil Code Section 1542 (and all similar ordinances and statutory, regulatory, or judicially created laws or rules of any other jurisdiction), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO
> EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING
> THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

(4)    <u>Retention of Liens.</u>

Key Bank shall retain its liens against is current collateral.

4.    <u>**Class 4 (the Secured Claim of Chase Secured by Plaza Apartments).**</u>

(1)    <u>Impairment And Voting.</u>

The Class 4 is unimpaired under this Plan. The holder of an Allowed Claim in Class 4 is not to vote to accept or reject this Plan.

(2)    <u>Allowance and Distribution.</u>

The Allowed Class 4 Claim is a secured claim. The Scheduled amount of the Class 4 Claim as of the Petition Date was $1,209,240.00. The Debtor estimates the value of the Class 4 Claim's collateral to be approximately $1,200,000.00 in the Schedules.

The Debtor shall continue to pay the Allowed Class 4 Claim in accordance with the contractual terms of the Chase Plaza Apartments Loan

(3)    <u>Retention of Liens.</u>

Chase shall retain its liens against the Plaza Apartments.

5.    <u>**Class 5 Claim (Allowed Secured Claim of Chase secured by Sierra Manor).**</u>

(1)    <u>Impairment And Voting.</u>

The Class 5 is unimpaired under this Plan. The holder of an Allowed Claim in Class 5 is not entitled to vote to accept or reject this Plan.

(2)    <u>Allowance and Distribution.</u>

The Allowed Class 5 Claim is a secured claim. The Scheduled amount of the Class 5 Claim as of the Petition Date was $1,382,321.00. The Debtor estimates the value of the Class 5 Claim's collateral to be approximately $1,480,000.00 in the Schedules.

The Debtor shall continue to pay the Allowed Class 4 Claim in accordance with the contractual terms of the Chase Plaza Apartments Loan

-18-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 18 of 47

(3)     Retention of Liens.

Chase shall retain its liens against Sierra Manor.

6.     **Class 6 Claim (Allowed Secured Claim of U.S. Bank).**

(1)     Impairment And Voting.

The Class 6 Claim is impaired under this Plan. The holder of an Allowed Claim in Class 6 is entitled to vote to accept or reject this Plan.

(2)     Allowance and Distribution.

The Allowed Class 6 Claim is a secured claim. The Filed amount of the Class 6 Claim is $5,439,995.55. The Filed Claim sets the value of U.S. Bank's collateral at $4,270,072.95.

On September 3, 2014, U.S. Bank filed a notice of its election for treatment under Section 1111(b)(2) of the Bankruptcy Code. Under Section 1111(b)(2), when an allowable election is made, then the holder of such a secured claim is required to be treated as a fully secured claim to the extent that the claim is allowed. Accordingly, U.S. Bank's has an Allowed Secured Claim in the Case in the amount of $5,439,995.55.

On the Effective Date, the U.S. Bank's Allowed Secured Claim shall be modified as follows:

Loan Amount: Pursuant to an agreement between the Debtor and U.S. Bank, the contractual balance on the Effective Date, prior to giving effect to the application of the funds U.S. Bank is holding in the $124,092.62 account, shall be a principal balance of $4,783,362.03, actual accrued but unpaid interest as of January 1, 2015 (this amount is $530,789.85 as of December 4, 2014, and will be updated as of January 1, 2015, to reflect additional interest accrual and any payments made between December 5, 2014, and January 1, 2015), and prepetition attorney fees of $109,749.07. This amount shall be the "U.S. Bank Loan Amount."

Change in Interest Rate: Commencing on January 1, 2015, the principal balance of the U.S. Bank Loan shall bear interest at a fixed rate of 7.155 percent per annum.

(a)     First optional interest rate deduction. If the Debtor makes a $75,000 principal curtailment to U.S. Bank by April 30, 2015 (not including the setoff of

-19-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
**DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11     Doc 260     Filed 01/20/15     Entered 01/20/15 11:00:55     Pg 19 of 47

$124,092.62 described below), then the interest rate will be reduced by 0.25%. However, if the interest rate is reduced, the amount of the monthly payments (as described below) will remain unchanged.

(b) Second optional interest rate deduction. If the Debtor makes an additional $75,000 principal curtailment by December 31, 2015 (not including the setoff of $124,092.62 described below), then the interest rate will be reduced by 0.25%. However, if the interest rate is reduced, the amount of the monthly payments (as described below) will remain unchanged.

<u>Change in Payment Schedule</u>: Beginning in January, 2015, Debtor shall make monthly payments of $39,000.00 per month to U.S. Bank on account of the U.S. Bank Loan. Beginning in January 2016, Debtor shall make monthly payments of $41,000.00 per month to U.S. Bank on account of the U.S. Bank Loan. Each monthly payment shall be applied first to interest accrued on the principal balance on and after January 1, 2015, and, when such interest is fully paid, then the remainder of each payment, if any, shall be applied to the principal balance of the U.S. Bank Loan. The payment each month shall be made so as to be actually received on or before the last business day of such month. The Debtor shall pay the entire remaining balance due (which will include the remaining principal balance, accrued but unpaid interest as of January 1, 2015, and prepetition attorney fees) on U.S. Bank's Loan Amount in full no later than December 31, 2018.

<u>Payment Location</u>: Debtor's payments shall be made payable to "U.S. Bank National Association" and delivered to Alan R. Milster, U.S. Bank National Association – Special Assets Group, SL-MO-T7CP, One U.S. Bank Plaza, St. Louis, MO 63101, Tel: (314) 418-2468, or such other address as U.S. Bank provides in the future to Debtor in writing.

<u>Setoff of Account</u>: Upon the Confirmation Date, U.S. Bank is authorized to setoff the $124,092.62 the Debtor is presently holding in an account at U.S. Bank and apply the $124,092.62 to the principal balance of the U.S. Bank Loan.

(3)    <u>Retention of Liens.</u>

The Allowed Class 6 Claim shall retain its lien against the Medical Building and any

-20-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 20 of 47

related collateral as provided for under the U.S. Bank Security Documents.

(4)    Grant of Additional Lien.

Within 10 business days of the Confirmation Date, Debtor must execute and deliver a first priority deed of trust to U.S. Bank, in a form reasonably acceptable to U.S. Bank (which U.S. Bank will supply), and which will provide U.S. Bank with insurable title, to pledge the Parking Lot to U.S. Bank as additional collateral for the Debtor's obligations to U.S. Bank.  U.S. Bank shall be entitled to record this deed of trust upon receipt.

(5)    Loan Documents.

Except to the extent expressly modified by this Plan, all of the existing documents (the "Existing Loan Documents") in favor of U.S. Bank evidencing or related to the Class 6 claim shall remain in full force and effect and are reaffirmed in their entirety.  All provisions of the Existing Loan Documents regarding the cash sweep, the CF Payment (as that term is defined in the Existing Loan Documents), payment of any monies received by the Debtor from third party loans, or any obligation of U.S. Bank to provide funding for tenant improvements or any other purpose are hereby deleted.  U.S. Bank will have no obligation to provide any further funding to the Debtor.

(6)    Financial Reporting.

In addition to any reporting requirements in the Existing Loan Documents, the Debtor shall also deliver to U.S. Bank by the fifteenth day of the month after month end a month-end balance sheet, an income statement, a detailed rent roll, leasing and operations narrative report, and bank account backup documentation for the preceding month.

(7)    Sale of Medical Building Subject to Holder's Right To Credit Bid.

The Plan contemplates that payment of the balance of the U.S. Bank Loan Amount which will be due on December 31, 2018, shall be funded by a sale or refinance of the Medical Building on or before December 31, 2018.  In any proposed sale of the Medical Building, the Holder of the Allowed Class 6 Claim shall have the right to credit bid the amount of its claim, at the time of the proposed sale, in accordance with Code § 363(k).  In the event that the Medical Building is not sold

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

or refinanced by the Debtor on or before December 31, 2018, and the U.S. Bank Loan is not paid in full, then U.S. Bank shall be free to exercise all of its available rights and remedies under the Existing Loan Documents.

(8)     Rental of Unleased Space in the Medical Building.

Debtor shall use its best efforts to lease the space in the Medical Building which is currently not leased.  The following terms shall govern the rental of the unleased space in the Medical Building:

(a)     All of the lease terms need to be not less than the economic equivalent of $17.50/square foot on a triple net basis, with a $25/square foot tenant improvement allowance.

(b)     By April 30, 2015, the Debtor must have signed new leases for at least 2,500 square feet.  Those tenants must begin paying rent by August 1, 2015. These leases must be to bona fide third party tenants.  Debtor's failure to have these leases and to provide evidence of these leases to U.S. Bank will be an event of default under the Existing Loan Documents, as modified by this Plan.  If the Debtor has these leases, then the interest rate will be reduced by 0.25%.  However, if the interest rate is reduced, the monthly loan payment amount will remain unchanged.

(c)     By December 31, 2015, Debtor must have signed new leases for not less than another 2,500 square feet.  Those tenants must begin paying rent by January 1, 2016.  At least 1,000 square feet must be to bona fide third party tenants, but the remaining 1,500 square feet or less may be to an entity owned by or affiliated with Dr. Haney.  Debtor's failure to have these leases and to provide evidence of these leases to U.S. Bank will be an event of default under the Existing Loan Documents, as modified by this Plan.

(9)     Release.

Debtor hereby releases and forever discharges U.S. Bank and U.S. Bank's agents, principals, successors, assigns, employees, officers, directors, and attorneys, and each of them, of and from any and all claims, demands, damages, suits, rights, defenses, offsets, or causes of action of every kind and nature that Debtor has or may have as of the Confirmation Date, whether known or unknown, contingent or matured, foreseen or unforeseen, asserted or unasserted, including, but not limited to, all claims for compensatory damages, general damages, special damages, consequential damages, incidental damages, punitive damages, attorney fees, and equitable relief. In furtherance of the releases set forth above, Debtor acknowledges and waives the benefits of

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 22 of 47

California Civil Code Section 1542 (and all similar ordinances and statutory, regulatory, or judicially created laws or rules of any other jurisdiction), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

7. **Class 7 Claim (Allowed Secured Claim of Alpine.**

(1) Impairment And Voting.

The Class 7 is impaired under this Plan. As an insider of the Debtor, the holder of an Allowed Claim in Class 7 is not entitled to vote to accept or reject this Plan.

(2) Allowance and Distribution.

The Allowed Class 7 Claim is a secured claim. The Scheduled amount of the Class 7 Claim as of the Petition Date was $2,303,673.00. The Debtor estimates the value of the Class 7 Claim's interest in collateral to be approximately $291,162.00 based upon the values provided for Alpine's collateral in the Schedules. Accordingly, Alpine is an undersecured creditor in the Case. Alpine shall have an Allowed Secured Claim in the Case in the amount of $291,162.00. The remaining balance of $2,012,475.00 shall be treated as and Allowed Class 9 Claim.

On the Effective Date, Alpine shall execute new loan and security documents or modify the existing Alpine Loan documents and Alpine Security Documents to provide as follows: the principal balance of the Alpine Loan shall be restated to $291,162 and shall accrue interest on an monthly basis calculated at the non-default interest rate as provided for under the Alpine Loan Documents. No payments shall be made on account of the Allowed Alpine Secured Claim until the Class 6 Claim has been paid in full. Thereafter the Allowed Alpine Secured Claim shall be paid in monthly installments to be determined by the Debtor and Alpine.

(3) Retention of Liens.

Alpine shall retain its existing liens against its collateral up to the amount of its Allowed Secured Claim.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
49419231\1

1/20/2015 8:22 AM

8. **Class 8 Claims General Unsecured Claims**

    (1)    Impairment And Voting.

    The Class 8 is impaired under this Plan. Holders of Allowed Claims in Class 8 are entitled to vote to accept or reject this Plan.

    (2)    Allowance and Distribution.

    The holders of Allowed Class 8 Claims shall be paid 100% of their Allowed Claims as follows: Commencing in December of 2016 and through December 2018, holders of Allowed Class 8 Claims shall be paid an annual payment of $25,000.00, which shall be paid Pro Rata to the holders of Allowed Class 8 Claims. Commencing in January 2020, the Debtor shall commit all available cash flow from their business operations toward payment of Allowed Class 8 Claims until those claims have been paid in full.

9. **Class 9 Claims (Allowed Unsecured Claim of Alpine)**

    (1)    Impairment and Voting.

    Class 9 Claims are impaired under the Plan. Holders of Allowed Claims in Class 9 are entitled to vote to accept or reject this Plan.

    (2)    Allowance and Distribution

    The holder of the Allowed Class 9 shall have an Allowed Claim in the amount $2,012,475.00.

    The Allowed Class 9 Claim, shall be entitled to be paid in full. No payments shall be made on account of the Allowed Class 9 Claim until all Allowed Class 6, 8, and 10 Claims have been paid in full in accordance with the Plan.

10. **Class 10 Claim (Allowed Unsecured Claim of Marcus Haney)**

    (1)    Impairment and Voting.

    The Holder of the Class 10 Claim is impaired under the Plan. The Holder of the Allowed Claim in Class 10 is entitled to vote to accept or reject this Plan.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1
1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 24 of 47

1          (2)     Allowance and Distribution

2          The Holder of the Allowed Class 10 shall have an Allowed Claim in the amount as

3   of the Petition Date of $63,670.00.

4          The Allowed Class 10 Claim arises out of a loan made to the Debtor to help fund

5   the purchase of the Plaza Apartments.  Under the terms of the agreement between the holder of the

6   Allowed Class 10 Claim and the Debtor, the Debtor is required to make monthly installment

7   payments of principal and interest in the amount of $2,283.63, commencing on October 5, 2001,

8   with the last payment coming due on September 5, 2016.  Provided that the Class 8 accepts the

9   plan, then the allowed Class 10 Claim shall continue to be paid in accordance with its original loan

10  agreement.

11         If Class 8 does not accept the Plan, then the Holder of the Allowed Class 10 Claim

12  shall receive nothing until the Class 8 Claim has been paid in full.

13         11.     **Class 11 Interests**

14                 (1)     Impairment and Voting.

15         Class 11 Interests are unimpaired under the Plan.  Class 10 Interests retain their interest in

16  the Reorganized Debtor.

17                              **V.**

18              **ACCEPTANCE OR REJECTION OF THIS PLAN**

19     A.     **Voting Of Claims.**

20         Each holder of an Allowed Claim in an impaired Class of Claims shall be entitled to

21  vote to accept or reject this Plan as provided for in the order entered by the Bankruptcy Court

22  establishing certain procedures with respect to the solicitation and tabulation of votes to accept or

23  reject this Plan (a copy of which was distributed together with the Disclosure Statement).  For

24  purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to

25  accept or reject this Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in

26  such Class held by one entity or any affiliate thereof (as defined in the Securities Act of 1933 and

27

28

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11     Doc 260     Filed 01/20/15     Entered 01/20/15 11:00:55     Pg 25 of 47

the rules and regulations promulgated thereunder) shall be aggregated and treated as one Allowed Claim in such Class.

**B.    Acceptance By A Class Of Creditors.**

Consistent with Section 1126(c) of the Bankruptcy Code and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of creditors shall have accepted this Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

**C.    Presumed Rejections Of Plan And Cram Down.**

For purposes of voting on this Plan, each holder of an Allowed Class 2 Priority Claim, Class 4, and Class 5 are conclusively presumed to have accepted the Plan. Debtor anticipates that the Holder of the Allowed Class 6 Claim will accept the Plan. Proponents shall utilize the provisions of section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of this Plan over the rejection, if any, of any Class entitled to vote to accept or reject this Plan.

**IV.**

**MEANS FOR IMPLEMENTATION AND**

**EXECUTION OF THE PLAN**

The Debtor and Guarantors anticipate that the Plan will be funded principally by a future net cash flow from the future operations of the Debtor, and in large part by a sale or refinance of the Medical Building pursuant to the terms of the Plan. The Debtor anticipates that Effective Date payments required under the plan will in fact be funded by Available Cash at the time of Confirmation. Debtors additionally believe that cash flow from the operation of its business and a sale or refinance of the Medical Building after the Debtor has had an opportunity to increase the cash flow from the Medical Building, plus the continuing cash flow from the Debtor's other real properties, will be sufficient to fund the Plan's post-Effective Date financial obligations.

-26-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 26 of 47

**A.** **Continuing Existence.**

 (a) From and after the Effective Date, Reorganized Debtor shall continue in existence and shall continue to operate its business in the ordinary course.

 (b) From and after the Effective Date, the then current officers of Debtors shall continue to serve in their respective capacities until such date that such officer or director resigns, is replaced or is terminated.

**B.** **Funding For This Plan.**

 The Debtors project that the future rents generates by the 142 N. 9th St. property and the Sierra Manor property will be more than sufficient to continue to service the loans of the holders of the Allowed Class 3 and Class 5 Claims.

 The property located at 1317 Colorado is currently projected to operate at a small annual cash flow deficiency of between $2,000 to $4,000.00 per year through 2016, at which time the obligation the Marcus Haney shall have been fully satisfied. Thereafter, 1317 Colorado is projected to operate at a positive cash flow of approximately $25,000.00 per annum during the next three years of operations. Debtor believes it will be able, during the initial five years of the plan, to improve operations of the 1317 Colorado Property to a break even.

 The Debtors will fund the distributions to the Allowed Class 6 Claim through a combination of the continued operation of the Medical Building, and a subsequent sale or refinance of the Building on or before the maturity date of the obligations as provided for under the Plan. The Plan proposed initial monthly payments of either $39,000.00 per month to the holder Allowed Class 6 Claim during 2015, and increasing to $41,000.00 per month for 2016, 2017, and 2018, with those payments being applied to both principal and interest as described in the treatment of the Class 6 Claim above. As evidenced by the 5 year cash flow projections based upon the existing and historical gross monthly rental income, operations of the Medical Building alone are sufficient to service the $39,000.00 monthly payment. The Plan contemplates that the Debtor will fully lease the remaining space in the Medical Building during the first twelve months after Confirmation, and thereby be able to increase the monthly debt service to $41,000.00.

Finally, on or before the maturity date of December 31, 2018, for the Allowed Class 6 Claim under the terms of the Plan, the Debtor shall sell or refinance the Medical Building for an amount that will, at a minimum, be sufficient to pay the balloon owed on the Class 6 Claim.

Without any tenant improvements to increase revenues, the Medical Building projected annual average net revenue would be $473,273.20. Assuming a 10% cap rate, Debtor anticipates being able to sell the Medical Building for at least $4.7 million. With tenant improvement to increase the cash flow, Debtor projects an average annual net revenue of $531,832.00, and again assuming a 10% cap rate, would project to a reasonable sale price of $5.3 million for the Medical Building which Debtor believes would be sufficient to retire the balloon owed to the Allowed Class 6 Claim without the need to liquidate additional collateral.

### C. Disbursing Agent.

The Disbursing Agent shall make all disbursements required to be made under the Plan.

### D. Accounts.

The Debtor may establish one or more interest-bearing accounts as it determines may be necessary or appropriate to effectuate the provisions of this Plan consistent with Section 345 of the Bankruptcy Code and any orders of the Bankruptcy Court. The Disbursing Agent shall be a signatory on said accounts.

### E. Closing Of The Chapter 11 Case.

When all Disputed Claims filed against Debtor have become Allowed Claims or have been disallowed by Final Order, and all Allowed Claims have been paid in accordance with the Plan, or at such earlier time as Proponent deems appropriate, Proponent shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

# VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

### A.     Distributions.

#### 1.     Effective Date Payments.

On the Effective Date, or as soon thereafter as practicable, the Disbursing Agent shall make distributions to the holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Claims in Classes 1 and 2 and make all necessary payments on the Allowed Secured Claim of Key Bank in Class 3, the Allowed Secured Claim of U.S. Bank in Class 6, and pursuant to Article IV of this Plan. All payments shall be made in accordance with the priorities established by the Bankruptcy Code.

#### 2.     Distributions on a Subsequent Distribution Dates.

Subsequent Distributions to Allowed Claims shall be made in accordance with the Plan. To the extent Available Cash is available subsequent to the Effective Date, Disbursing Agent shall, on a Subsequent Distribution Date, distribute such Available Cash to the holders of Claims entitled thereto that were Allowed on the Effective Date or subsequently have become Allowed on or before the Subsequent Distribution Date in amounts necessary to cause such holders to have received aggregate distributions of Cash in respect of such Allowed Claims equal to the distributions that such holders would have received in respect of such Allowed Claims on the Effective Date if (x) such Available Cash had been available for distribution on the Effective Date, (y) such Allowed Claims had been Allowed on the Effective Date in the amounts in which they are Allowed on the Subsequent Distribution Date, and (z) Claims or portions thereof that have become disallowed subsequent to the Effective Date and on or before the Subsequent Distribution Date had been disallowed on the Effective Date.

### B.     Distributions Of Cash.

At the option of Proponents, any Cash payment to be made by Disbursing Agent pursuant to this Plan may be made by check drawn on a domestic bank or by wire transfer.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 29 of 47

**C.** **Delivery Of Distributions And Undeliverable Distributions.**

Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address as set forth on the Proofs of Claim filed by such holders or other writing notifying Proponents of a change of address. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until Proponents are notified of such holder's then current address, at which time all missed distributions shall be made to such holder, without interest. All Claims for undeliverable distributions shall be made on or before the earlier of (a) with respect to the initial distributions made on or after the Effective Date, one hundred and twenty (120) days after the date such undeliverable distribution was initially made, and (b) with respect to the distributions made on a Subsequent Distribution Date, sixty (60) days after the date such undeliverable distribution was initially made. After such date (as applicable), all unclaimed property shall, become deposited into the court registry as unclaimed funds.

**D.** **Withholding And Reporting Requirements.**

In connection with this Plan and all instruments issued in connection therewith and distributed thereon, Debtors shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under this Plan shall be subject to any such withholding or reporting requirements.

**E.** **Setoffs.**

Except as set forth herein, the Debtor may, in accordance with section 553 of the Bankruptcy Code and applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Claim (before any distribution is made on account of such Claim), the claims, rights and causes of action of any nature that Debtors may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claims, rights and causes of action that Debtor or the Estate may possess against such holder; and provided further, however, that any claims of Debtor arising before the

-30-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
**DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION**
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11     Doc 260     Filed 01/20/15     Entered 01/20/15 11:00:55     Pg 30 of 47

1. Commencement Date shall first be setoff against Claims against Debtor arising before the

2. Commencement Date.  As of the date of the Plan, the Debtor is not aware of any existing rights of

3. set-off against Creditors.  Notwithstanding the foregoing, the Debtor shall not setoff any

4. obligations to U.S. Bank against U.S. Bank's Allowed Claim or to Key Bank on Key Bank's

5. Allowed Claim.

6.         **F.**        **Professional Fees And Expenses.**

7.         Subject to the limitations on chapter 11 administrative expenses provided for in

8. Article XIII, Section H. of this Plan, each professional Person or firm retained with approval by

9. order of the Bankruptcy Court or requesting compensation in the Chapter 11 Case pursuant to

10. section 330 or 503(b) of the Bankruptcy Code shall be required to file an application for an

11. allowance of final compensation and reimbursement of expenses in the Chapter 11 Case incurred

12. through the Confirmation Date on or before a date to be set by the Bankruptcy Court in the

13. Confirmation Order.  Objections to any such application shall be filed on or before a date to be set

14. by the Bankruptcy Court in the Confirmation Order.

15.         **G.**        **Transactions On Business Days.**

16.         If the Effective Date or any other date on which a transaction may occur under this

17. Plan shall occur on a day that is not a Business Day, the transactions contemplated by this Plan to

18. occur on such day shall instead occur on the next succeeding Business Day.

19.         **VIII.**

20.   **PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS**

21.         **A.**        **No Distribution Pending Allowance.**

22.         Notwithstanding any other provision of this Plan, no distribution shall be made

23. under this Plan on account of any Disputed Claim, unless and until such Claim becomes an

24. Allowed Claim.

25.         **B.**        **Resolution Of Disputed Claims.**

26.         Unless otherwise ordered by the Bankruptcy Court after notice and a hearing and

27. except with respect to applications for allowances of compensation and reimbursement of expenses

28.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 31 of 47

under sections 330 and 503 of the Bankruptcy Code, the Trustee and the Reorganized Debtor shall have the right to make and file objections to Claims (which includes, without limitation, objections to Claims filed pursuant to Article IX, Section C. of this Plan) and shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than ninety (90) days after the Confirmation Date; provided, however, that such ninety (90) day period may be automatically extended by the Trustee (in consultation with the Debtor and Union Bank), without any further application to, or approval by, the Bankruptcy Court. From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Reorganized Debtor elects to withdraw any such objection or the Reorganized Debtor and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court. Notwithstanding the foregoing, the Debtor shall not object to U.S. Bank's Allowed Claim or to Key Bank's Allowed Claim.

## C.    Estimation.

The Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Reorganized Debtor had previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. On and after the Confirmation Date, Claims which have been estimated subsequently may be compromised, settled, withdrawn or otherwise resolved without further order of the Bankruptcy Court as provided in Article VIII, Section B. of this Plan.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 32 of 47

**D. Reserve Account For Disputed Claims.**

On and after the Effective Date, Disbursing Agent shall hold in the Disputed Claims Reserve, Cash in an aggregate amount sufficient to pay to each holder of a Disputed Claim the amount of Cash that such holder would have been entitled to receive under this Plan if such Claim had been an Allowed Claim on the Effective Date. Cash withheld and reserved for payments to holders of Disputed Claims shall be held and deposited by Debtors in one or more segregated interest-bearing reserve accounts to be used to satisfy such Claims if and when such Disputed Claims become Allowed Claims. To the extent any Disputed Claim is disallowed by a Final Order, the Reorganized Debtor shall transfer any amounts previously reserved in the Disputed Claims Reserve on account of such disallowed Claim out of the Disputed Claims Reserve and such amount shall become Available Cash that shall be available for subsequent distributions.

**E. Investment Of Disputed Claims Reserve.**

Proponents shall be permitted, from time to time, in their sole discretion, to invest all or a portion of the Cash in the Disputed Claims Reserve in United States Treasury Bills, interest-bearing certificates of deposit, tax exempt securities or investments permitted by section 345 of the Bankruptcy Code or otherwise authorized by the Bankruptcy Court, using prudent efforts to enhance the rates of interest earned on such Cash without inordinate credit risk or interest rate risk. All interest earned on such Cash shall be held in the Disputed Claims Reserve and, after payment of interest as provided for in Article VIII, Section F. of this Plan and after satisfaction of any expenses incurred in connection with the maintenance of the Disputed Claims Reserve, including taxes payable on such interest income, if any, shall be transferred out of the Disputed Claims Reserve and become Available Cash for distribution in accordance with this Plan.

**F. Allowance Of Disputed Claims.**

If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, Disbursing Agent shall, on the fifteenth Business Day of the first month following the calendar quarter in which the Disputed Claim becomes an Allowed Claim, distribute from the Disputed Claims Reserve to the holder of such Allowed Claim the amount of Cash that such holder would

-33-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 33 of 47

have been entitled to receive under this Plan if such Claim had been an Allowed Claim on the Effective Date, together with such claimholder's pro rata share of net interest on such Allowed Claim. For purposes of the immediately preceding sentence, such holder's "pro rata" share of net interest shall be calculated by multiplying the amount of interest on deposit in the applicable Disputed Claims Reserve on the date immediately preceding the date on which such Allowed Claim is to be paid by a fraction, the numerator of which shall equal the amount of such Allowed Claim and the denominator of which shall equal the amount of all Disputed Claims for which deposits are being held in the applicable Disputed Claims Reserve on the date immediately preceding the date on which such Allowed Claim is to be paid.

G. **Release Of Funds From Disputed Claims Reserve.**

If at any time or from time to time after the Effective Date, there shall be Cash in the Disputed Claims Reserve in an amount in excess of Debtors' maximum remaining payment obligations to the then existing holders of Disputed Claims under this Plan, such excess funds, and the pro rata share of net interest in respect thereof, shall become Available Cash for distribution in accordance with this Plan.

# IX.

# TREATMENT OF EXECUTORY
# CONTRACTS AND UNEXPIRED LEASES

A. **Executory Contracts And Unexpired Leases.**

On the Confirmation Date, all executory contracts and unexpired leases (a) that exist between Debtor and any Person not previously rejected pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date, or (b) as to which a motion for approval of the assumption or rejection of such contract or lease has been filed and served prior to the Confirmation Date shall be assumed by the Reorganized Debtor.

-34-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 34 of 47

**B.    Approval Of Rejection Of Executory Contracts And Unexpired Leases.**

Entry of the Confirmation Order shall constitute the approval, pursuant to section 365(a) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article IX, Section A. of this Plan.

**C.    Bar Date For Filing Proofs Of Claim Relating To Executory Contracts And Unexpired Leases Rejected Pursuant To This Plan.**

Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Article IX, Section A. of this Plan must be filed with the Bankruptcy Court no later than twenty (20) days after the Confirmation Date.  Any Claims not filed within such applicable time periods will be forever barred from assertion against Debtors, the Debtors in Possession and the Estate.

**X.**

**EFFECTIVENESS OF THIS PLAN**

**A.    Conditions To The Effective Date.**

The following are conditions precedent to the Effective Date of this Plan:

(a)    The Bankruptcy Court shall have entered the Confirmation Order confirming this Plan in form and substance satisfactory to the Proponent;

(b)    The Confirmation Order shall have become a Final Order; or in the alternative, in the discretion of the Proponent, the Confirmation Order is not subject to a stay pending an appeal of the Confirmation Order; and

(c)    Each of the individual guarantors of the Debtor's obligations to U.S. Bank shall have signed a stipulated judgment in the Superior Court for Kittitas County acknowledging the guarantor's liability in respect of the amount owed by the Debtor to U.S. Bank. Notwithstanding the foregoing, U.S. Bank will not enter the judgment in the Superior Court for Kittitas County or record the judgment until there is an event of default under this Plan.  U.S. Bank will give 5 days' notice of default prior to entering or recording the judgment, with an opportunity to cure.

-35-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11     Doc 260     Filed 01/20/15     Entered 01/20/15 11:00:55     Pg 35 of 47

(d)    All documents, instruments and agreements provided for under, or necessary to implement, this Plan shall have been executed and delivered by the parties thereto, in form and substance satisfactory to Proponent, unless such execution or delivery has been waived by the parties benefited thereby.

**B.    Waiver Of Conditions.**

The Proponent may waive the conditions to effectiveness of this Plan set forth in Article X, Section A. of this Plan.

## XI.

## EFFECT OF CONFIRMATION

**A.  Discharge.**

Pursuant to Bankruptcy Code § 1141(d)(1), to the extent that any Claims are impaired by the Plan, the Reorganized Debtor will obtain a discharge of its debts to any holders of Claims impaired pursuant to this Plan, and impaired creditors shall only be entitled to treatment of their Claims as provided for under the Plan.

**B.  Binding Effect.**

On and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or Equity Interests in, Debtor and its respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under this Plan and whether or not such holder has accepted this Plan.

**C.  Term Of Injunctions or Stays.**

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Case is closed or dismissed.  Notwithstanding the foregoing, U.S. Bank may exercise its rights against the Debtor and/or the Guarantors in the event of a default under this Plan or the Existing Loan Documents (as modified by this Plan), without the need to seek or obtain relief from any automatic stay or injunction.  Also notwithstanding the foregoing, U.S. Bank and/or Key Bank may exercise their applicable rights

-36-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 36 of 47

against the Debtor and/or the any guarantors of the U.S. Bank Loan or U.S. Bank Note, or the Key Bank Loan or Key Bank Note, as applicable, in the event of a default under the U.S. Bank's Existing Loan Documents, the Plan Related Documents or the Key Bank Loan Documents (as modified by this Plan), as applicable, without the need to seek or obtain relief from any automatic stay or injunction.

## D.  Rights Of Action.

(a)     On and after the Confirmation Date, Reorganized Debtor, will have the exclusive right to enforce any and all present or future rights, claims or causes of action against any Person and rights of Debtor that arose before or after the Commencement Date, including, but not limited to, rights, claims, causes of action, avoiding powers, suits and proceedings arising under sections 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code.  The Reorganized Debtor may pursue, abandon, settle or release any or all such rights of action, as they deem appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court.  The Reorganized Debtor may, in its sole discretion, offset any such claim held against a Person against any payment due such Person under this Plan; provided, however, that any claims of Debtor arising before the Commencement Date shall first be offset against Claims against Debtor arising before the Commencement Date, and further provided that Debtor shall not offset any claims against U.S. Bank or Key Bank.

(b)     On and after the Confirmation Date, all Persons are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any Claim, debt, right or cause of action of Debtor for which the Trustee retains sole and exclusive authority to pursue in accordance with Article XI, Section E(a) of this Plan.

## E.  Injunction.

Except as otherwise provided in this Plan, the Confirmation Order will provide, among other things, that all Persons who have held, hold or may hold Claims existing as of or prior

-37-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419331.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 37 of 47

to Confirmation Date, or who have held, hold or may hold any Equity Interest existing as of or prior to Confirmation Date, are permanently enjoined from and after the Effective Date from:

(a)     commencing or continuing (whether directly, indirectly, derivatively or otherwise) in any manner any action or other proceedings of any kind against the Debtor, the Trustee or any of the respective past, present or future agents, employees, directors, representatives, accountants, financial advisors or attorneys of any of the Debtor based upon, relating to, arising out of, or in any way connected with any such Claim or Equity Interest;

(b)     enforcing, attaching, collecting or recovering (whether directly, indirectly, derivatively or otherwise) by any manner or means any judgment, award, decree or order against the Debtor or any of the respective past, present or future agents, employees, members, representatives, accountants, financial advisors or attorneys of any of the Debtor, or against the property of the Debtor, or any of the respective past, present or future agents, employees, directors, representatives, accountants, financial advisors or attorneys of the Debtor with respect to any such Claim or Equity Interest;

(c)     creating, perfecting or enforcing (whether directly, indirectly, derivatively or otherwise) any encumbrance of any kind against the Debtor or any of the respective past, present or future agents, employees, directors, representatives, accountants, financial advisors or attorneys of any of the Debtor or the Trustee or against the property of the Debtor and any of their respective past, present or future agents, employees, directors, representatives, accountants, financial advisors or attorneys with respect to any such Claim or Equity Interest, except that holders of security interests in or liens, charges or other encumbrances on property may perfect such security interests, liens, charges or other encumbrances;

(d)     asserting (whether directly, indirectly, derivatively or otherwise) any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor or any of the respective past, present or future agents, employees, directors, representatives, accountants, financial advisors or attorneys of any of the Debtor with respect to any such Claim or Equity Interest;

-38-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483          1/20/2015 8:22 AM
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

14-00843-FLK11     Doc 260     Filed 01/20/15     Entered 01/20/15 11:00:55     Pg 38 of 47

1         (e)        commencing or continuing (whether directly, indirectly, derivatively or

2 otherwise) in any manner any action or other proceeding of any kind with respect to any Claim or

3 Equity Interest as to which such Person shall be deemed to have covenanted not to sue as provided

4 in Article XI, Section F. of this Plan; and

5         (f)        commencing any action, collecting or recovering (whether directly,

6 indirectly, derivatively or otherwise) by any manner or means any judgment, award, decree or

7 order against the immediate or any mediate transferee of any property distributed pursuant to this

8 Plan based upon a claim that the transferor's receipt of such property constituted a fraudulent

9 conveyance, preference, violation of a bulk sales law or based upon any other claim that receipt

10 and/or distribution of property by transfer pursuant to this Plan is wrongful.

## XII.

## RETENTION OF JURISDICTION

### A.  Jurisdiction Of Bankruptcy Court.

14         The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under,

15 arising out of, or related to, the Chapter 11 Case and this Plan pursuant to, and for the purposes of,

16 sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following

17 purposes:

18         (a)        to determine the allowance or classification of Claims and to hear and

19 determine any objections thereto;

20         (b)        to hear and determine any motions for the assumption, assumption and

21 assignment or rejection of executory contracts or unexpired leases, and the allowance of any

22 Claims resulting therefrom;

23         (c)        to determine any and all motions, adversary proceedings, applications,

24 contested matters and other litigated matters in connection with the Chapter 11 Case that may be

25 pending in the Bankruptcy Court on, or initiated after, the Effective Date;

26         (d)        to enter and implement such orders as may be appropriate in the event the

27 Confirmation Order is for any reason stayed, revoked, modified, or vacated;

28

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00483-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 39 of 47

(e) to issue such orders in aid of the execution, implementation and consummation of this Plan to the extent authorized by section 1142 of the Bankruptcy Code or otherwise;

(f) to construe and take any action to enforce this Plan;

(g) to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h) to modify the Plan pursuant to section 1127 of the Bankruptcy Code, or to remedy any apparent non-material defect or omission in this Plan, or to reconcile any non-material inconsistency in the Plan so as to carry out its intent and purposes;

(i) to hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

(j) to determine any other requests for payment of Priority Tax Claims, Other Priority Claims, or Administrative Expense Claims;

(k) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

(l) to consider and act on the compromise and settlement or payment of any Claim against the Debtors or the Estate;

(m) to recover all assets of Debtor and property of the Estate, wherever located;

(n) to determine all questions and disputes regarding title to the assets of the Debtor or the Estate;

(o) to issue injunctions, enter and implement other orders or to take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(p) to remedy any breach or default occurring under this Plan;

(q) to resolve and finally determine all disputes that may relate to, impact on or arise in connection with, this Plan;

-40-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483    1/20/2015 8:22 AM
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 40 of 47

(r)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Commencement Date through, and including, the Final Distribution Date);

(s)    to hear and determine all claims, rights or disputes arising under or in connection with the Settlement Agreement and related agreements;

(t)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(u)    to hear any other matter consistent with the provisions of the Bankruptcy Code; and

(v)    to enter a final decree closing the Chapter 11 Case.

Notwithstanding the foregoing, in the event of default of this Plan, under U.S. Bank's Existing Loan Documents (as modified by this Plan), under the Key Bank Loan Documents (as modified by this Plan), U.S. Bank or Key Bank, as applicable, may exercise its rights and remedies in any court of competent jurisdiction.

## XIII.

## MISCELLANEOUS PROVISIONS

### A.  Events Of Default By The Debtor.

Any violation of the terms of the Plan, including the failure to make the payments required by the Plan or the failure to perform any act or duty imposed upon them by the Plan will be deemed to be an event of default.  All creditors and other parties in interest will retain all rights and remedies available to them under the laws of the State of Washington and 11 U.S.C. § 1112(b) in the event of a default.

### B.  Deletion Of Classes.

Any class of Claims that does not contain as an element thereof an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date of the commencement

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
49419231.1

1/20/2015 8:22 AM

of the confirmation hearing shall be deemed deleted from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such class or subclass under section 1129(a)(8) of the Bankruptcy Code.

## C. Effectuating Documents And Further Transactions.

The Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases and other agreements or documents and take such actions on behalf of Debtor as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

## D. Exemption From Transfer Taxes.

Pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by this Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

## E. Post-Confirmation Date Fees And Expenses of Professionals.

The Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the professional Persons employed by Reorganized Debtor in connection with the implementation and consummation of this Plan, the claims reconciliation process, and any other matters as to which such professionals may be engaged. The fees and expenses of such professionals shall be paid after ten (10) Business Days after submission of a detailed invoice therefor to the Reorganized Debtor. If Debtor disputes the reasonableness of any such invoice, the Debtor shall timely pay the undisputed portion of such invoice, and the Debtor, or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice.

## F. Payment Of Statutory Fees.

All fees payable pursuant to Chapter 123 of title 28, United States Code, as determined by the Bankruptcy Court and the United States Trustee on the Confirmation Date, shall

-42-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 42 of 47

be paid on the Effective Date.  Any statutory fees accruing after the Confirmation Date shall constitute Administrative Expense Claims and be paid in accordance with Article II, Section A. of this Plan.  United States Trustee quarterly fees will be paid post-confirmation in accordance with Title 28 U.S.C. § 1930(a)(6).

### G.  Post-Confirmation Compliance With United States Trustee Reporting Requirements.

The Reorganized Debtor shall prepare post-confirmation operating reports in accordance with the United States Trustee's Operating and Reporting Requirements for Chapter 11 Cases.

### H.  Modification Of Plan.

The Reorganized Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan at any time prior to the entry of the Confirmation Order; provided however, that the Debtor may not modify the proposed treatment of U.S. Bank's Class 6 Allowed Claim.  After the entry of the Confirmation Order, Proponents may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  A holder of an Allowed Claim or Equity Interest that is deemed to have accepted this Plan shall be deemed to have accepted this Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Equity Interest of such holder.

### I.  Withdrawal Or Revocation.

The Debtor may withdraw or revoke this Plan at any time prior to the Confirmation Date.  If the Debtor revokes or withdraws this Plan prior to the Confirmation Date then this Plan shall be deemed null and void in all respects. If the Confirmation Date does not occur on or before April 30, 2015, the Debtor shall have the right to declare this Plan null and void effective on delivery of written notice pursuant to Article XIII, Section N. of this Plan.  In such event, nothing contained herein shall or shall be deemed to (a) constitute a waiver or release of any Claim by or

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231\1

1  against, or any Equity Interest in, the Debtors or any other Person, or (b) prejudice in any manner

2  the rights of Debtor or any other Person in any further proceedings involving Debtors.

3  **J.  Courts Of Competent Jurisdiction.**

4  If the Bankruptcy Court abstains from exercising, or declines to exercise,

5  jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such

6  abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit

7  or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to

8  such matter.

9  **K.  Notices.**

10  Any notices to or requests of Debtors by parties in interest under or in connection

11  with this Plan shall be in writing and served either by (a) certified mail, return receipt requested,

12  postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, all charges prepaid,

13  and shall be deemed to have been given when received by the following parties:

14  Byron Haney
    [address]

15  Ellensburg, WA 98926
    509-962-6348

16  509-962-2003 (fax)

17  Roger Haney
    1442 St. Francis Ave.

18  Modesto, CA 95356
    209-545-0919

19  _____ (fax)

20  and

21  Metiner G. Kimel
    1115 W. Lincoln Ave., Ste 105

22  Yakima, WA 98902
    509-452-1115

23  509-451-1116

24  Counsel for Debtor

25  with a copy to

26  Metiner G. Kimel
    1115 W. Lincoln Ave., Ste 105

27  Yakima, WA 98902
    509-452-1115

28

-44-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483                    1/20/2015 8:22 AM
**DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF**
**REORGANIZATION**
49419231.1

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 44 of 47

509-451-1116

Counsel for Debtor

and

    Alan R. Milster
    U.S. Bank National Association – Special Assets Group
    SL-MO-T7CP, One U.S. Bank Plaza
    St. Louis, MO 63101

with a copy to:

    Teresa H. Pearson
    Miller Nash llp
    111 S.W. Fifth Avenue, Suite 3400
    Portland, Oregon  97204

    Counsel for U.S. Bank

and

    James A. Perkins
    Larson, Berg & Perkins
    105 N. 3rd St.
    Yakima, WA  98902
    509-457-1515
    509-457-1027

    Counsel for the Guarantors

## L.  Severability.

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any term or provision of this Plan is invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder or the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of

-45-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 45 of 47

1  this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and

2  enforceable pursuant to its terms.

3        **M. <u>Governing Law.</u>**

4        Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the

5  rights and obligations arising under this Plan shall be governed by, and construed and enforced in

6  accordance with, the laws of the State of Washington, without giving effect to the principles of

7  conflicts of law thereof.

8        **N. <u>Exhibits.</u>**

9        All Exhibits and Schedules to this Plan are incorporated into and are a part of this

10 Plan as if set forth in full herein.

11     DATED at Modesto, California this __ day of January, 2015

12                RIVER-BLUFF ENTERPRISES, INC.

13

14                _____

               By: Roger Haney, President

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
**DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
49419231.1

1/20/2015 8:22 AM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 46 of 47

1   this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and

2   enforceable pursuant to its terms.

3           M. Governing Law.

4           Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the

5   rights and obligations arising under this Plan shall be governed by, and construed and enforced in

6   accordance with, the laws of the State of Washington, without giving effect to the principles of

7   conflicts of law thereof.

8           N. Exhibits.

9           All Exhibits and Schedules to this Plan are incorporated into and are a part of this

10  Plan as if set forth in full herein.

11         DATED at Modesto, California this ___ day of January, 2015

12                              RIVER-BLUFF ENTERPRISES, INC.

13                              _Roger Haney  President_

14                              By: Roger Haney, President

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-46-

IN RE RIVER BLUFF ENTERPRISES, INC., CASE NO. 14-00483
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION
4941923.1

1/19/2015 4:23 PM

14-00843-FLK11    Doc 260    Filed 01/20/15    Entered 01/20/15 11:00:55    Pg 47 of 47