METINER G. KIMEL – WSBA 21280
KIMEL LAW OFFICES
1115 West Lincoln Ave., Suite 105
Yakima, WA 98902
Telephone: (509) 452-1115
Facsimile: (509) 452-1116

Counsel for the Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Case No. 14-00843 |
| River Bluff Enterprises, Inc. | **DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF REORGANIZATION** |
| Debtor and Debtor-in-Possession. | |
| | DATE: TIME: PLACE: |

## I.

## INTRODUCTION

Contemporaneously with the filing of this Disclosure Statement, River Bluff Enterprises, Inc., the debtor and debtor in possession in the case of In re River Bluff Enterprises, Inc., Case No. 14-00483 (referred to hereafter as the "Debtor") has filed with the United States Bankruptcy Court for the Eastern District of Washington, a Plan of Reorganization in the above-captioned Chapter 11 case ("the Plan"). *Your rights may be affected. You should read this Disclosure Statement and the Plan provisions herein carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

-1-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 1 of 62

The Debtor provides this Disclosure Statement to creditors, equity security holders and other parties in interest pursuant to 11 U.S.C. § 1125. The purpose of this Disclosure Statement is to provide creditors, equity security holders, and other parties in interest who are entitled to vote with information that will enable a reasonable investor typical of holders of Claims against and Equity Interests in the Debtor to make an informed decision as to whether they will vote to accept or reject the Plan.

To the extent that any statement made in this Disclosure Statement is inconsistent with any provision in the Plan, the provisions of the Plan shall control. To the extent that any statement made in this Disclosure Statement is inconsistent with any provision of the Bankruptcy Code, the Bankruptcy Code shall control.

Interested parties are referred to 11 U.S.C. § 1125, which provides, in part:

"(b)    An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without valuation of the debtor or an appraisal of the debtor's assets.

        *        *        *

(e)    A person that solicits acceptance or rejection of a plan in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale or purchase of a security, offered or sold under the plan of the debtor, or an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation of participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase of securities.

The Debtor has prepared this Disclosure Statement to disclose that information which, in its opinion, is material, important and necessary to an evaluation of the Plan. The material herein contained is intended solely for that purpose and solely for the use of known creditors and interest holders of the Debtor. Accordingly, the material may not be relied upon for any purpose other than a determination of how to vote on the Plan.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483          1/20/2015 8:30 AM
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1        Materials contained in this Disclosure Statement are not necessarily sufficient for the

2   formation of a judgment by any creditor concerning the preference of any alternative to the Plan.

3   Materials referring to alternatives to the Plan are limited by both practical considerations of space

4   and the opinions of the Debtor regarding same.  In addition, applicable law does not require

5   inclusion in a disclosure statement of information regarding alternative plans.

6   ## II.

7   ## DISCLAIMER

8        APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT

9   SHALL MEAN ONLY THAT THE BANKRUPTCY COURT HAS DETERMINED THAT THIS

10  DISCLOSURE STATEMENT, AS APPROVED, CONTAINS ADEQUATE INFORMATION,

11  MEANING INFORMATION OF A KIND, AND IN SUFFICIENT DETAIL, AS FAR AS IS

12  REASONABLY PRACTICABLE IN LIGHT OF THE NATURE AND HISTORY OF THE

13  DEBTOR AND THE CONDITION OF THE DEBTOR'S BOOKS AND RECORDS, THAT

14  WOULD ENABLE A HYPOTHETICAL REASONABLE INVESTOR TYPICAL OF HOLDERS

15  OF CLAIMS OR EQUITY INTERESTS OF THE RELEVANT CLASS TO MAKE AN

16  INFORMED DECISION ABOUT THE PLAN.  THE BANKRUPTCY COURT ORDER

17  APPROVING THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE A FACTUAL

18  DETERMINATION AS TO THE ACCURACY OF ANY REPRESENTATIONS OR

19  STATEMENTS OF FACT MADE HEREIN, NOR SHALL THE BANKRUPTCY COURT'S

20  APPROVAL OF THIS DISCLOSURE STATEMENT BE DEEMED AN ENDORSEMENT OF

21  THE PLAN.

22       NO REPRESENTATIONS, INCLUDING REPRESENTATIONS REGARDING THE

23  VALUE OF DEBTOR'S PROPERTY, DEBTOR'S BUSINESS, OR THE AMOUNT AND

24  CLASSIFICATION OF ASSETS AND LIABILITIES AGAINST DEBTOR'S BANKRUPTCY

25  ESTATE, ARE AUTHORIZED BY THE DEBTOR FOR THE PURPOSE OF SOLICITING

26  VOTES FROM IMPAIRED CREDITORS OR EQUITY SECURITY HOLDERS OTHER THAN

27  AS SET FORTH IN THIS DISCLOSURE STATEMENT.  ANY REPRESENTATIONS OR

28

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00483-FLK11   Doc 261   Filed 01/20/15   Entered 01/20/15 11:13:58   Pg 3 of 62

INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION. ALL OF THE FINANCIAL INFORMATION AND ASSUMPTIONS CONTAINED HEREIN AND ALL OF THE ASSUMPTIONS WITH RESPECT TO THE VALUE OF ASSETS AND THE AMOUNT OF CLAIMS REPRESENT DEBTOR'S BEST ESTIMATE. IF YOU DESIRE TO MAKE YOUR OWN INVESTIGATION AS TO THE VALUE OF ASSETS OR AMOUNT OF CLAIMS, IT IS YOUR RESPONSIBILITY TO DO SO.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT BY AN INDEPENDENT CERTIFIED PUBLIC ACCOUNTANT. DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH THE INFORMATION IS ACCURATE TO THE BEST OF DEBTOR'S KNOWLEDGE, INFORMATION AND BELIEF. DEBTOR HAS, IN THE PREPARATION OF THIS DISCLOSURE STATEMENT, MADE ITS BEST EFFORT TO BE AS ACCURATE AS IS REASONABLY PRACTICABLE GIVEN THE NATURE OF DEBTOR'S BUSINESS AND IN LIGHT OF THE NATURE AND HISTORY OF THE DEBTOR AND THE CONDITION OF THE DEBTOR'S BOOKS AND RECORDS.

CERTAIN MATERIALS CONTAINED IN THIS DISCLOSURE STATEMENT HAVE BEEN ADOPTED DIRECTLY FROM OTHER READILY ACCESSIBLE DOCUMENTS, INCLUDING FILINGS IN DEBTOR'S BANKRUPTCY CASE, AND OTHER INSTRUMENTS. DEBTOR HAS MADE EVERY REASONABLE EFFORT TO RETAIN THE MEANING OF SUCH DOCUMENTS AND INSTRUMENTS. HOWEVER, YOU ARE URGED TO RELY UPON THE CONTENTS OF SUCH DOCUMENTS AND INSTRUMENTS ONLY UPON A THOROUGH REVIEW OF THE DOCUMENTS AND INSTRUMENTS THEMSELVES.

THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT, IN ANY WAY, BE CONSTRUED AS LEGAL, BUSINESS OR TAX ADVICE. EACH CREDITOR, EQUITY SECURITY HOLDER AND OTHER PARTY IN INTEREST SHOULD CONSULT

-4-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483          1/20/2015 8:30 AM
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 4 of 62

HIS OWN ATTORNEY, BUSINESS ADVISOR, INVESTMENT ADVISOR AND TAX ADVISOR CONCERNING THE LEGAL, BUSINESS, TAX AND RELATED ASPECTS OF THE PLAN.

## III.

### DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION

### A.    DEFINITIONS

The following terms shall have the meanings stated for purposes of the Plan.  Terms not defined in this Article or elsewhere in the Plan shall have the meanings defined in the Bankruptcy Code, or, for any term not defined in the Bankruptcy Code, the meaning attributed to such term through custom or usage.  Certain terms are, for convenience and ease of reference only, capitalized throughout the Plan.  The capitalization of or failure to capitalize any term, however, shall not, unless the context otherwise requires, be of any significance to a determination of the meaning of any term.  Whenever the context requires, the singular shall include the plural and masculine shall include the feminine.

1.    **"142 N. 9th Street"** means that certain commercial real property, including the high school located thereon,  at 142 N. 9th Street, Modesto, California as further described in the Key Bank Deed of Trust, defined *infra*.

2.    **"Administrative Claim"** means a Claim for costs and expenses of administration allowed under Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(1) of the Bankruptcy Code, including, without limitation:  (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

3. **"Allowed Amount"** means the amount of any Claim against the Debtor determined in accordance with Sections 502 and 506(a) of the Bankruptcy Code and any other applicable section of the Bankruptcy Code, and recognized by the Debtor as valid, allowed by this Plan, or allowed by Final Order of the Court.

4. **"Allowed Claim"** means a Claim against the Debtor to the extent that -

    a)    a Proof of Claim was timely filed; or is deemed filed under applicable law or by reason of an order of the Bankruptcy Court; and

    b)    the Debtor or Reorganized Debtor does not file an objection within a time fixed by the Bankruptcy Court and the Claim is not otherwise a Disputed Claim (but only to the extent that such Claim is not a Disputed Claim); (2) the Claim is allowed (and only to the extent allowed) by a Final Order; or (3) the Claim is allowed under this Plan.

5. **"Allowed Class __ Claim"** means an Allowed Claim in the particular Class described.

6. **"Allowed Priority Claim"** means an Allowed Claim entitled to priority pursuant to Sections 507(a)(3), (4) or (6) of the Bankruptcy Code.

7. **"Allowed Secured Claim"** means an Allowed Claim secured by a lien, security interest or other charge against property in which the estate has an interest, or which is subject to set-off under Section 553 of the Bankruptcy Code, (a) to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such Secured Claim in the estate's interest in such property, or to the extent of the amount subject to any set-off, as the case may be, or (b) where the holder of the Claim has made an election under Section 1111(b) of the Bankruptcy Code, to the extent of the amount of the Claim.

8. **"Alpine"** means Alpine Townhouse Apartments, LLC, a California limited liability company owned by Byron Haney and Rose Haney, Roger Haney and Marleta Haney, Marcus Haney and Jeanette Haney, and Eric and Sue Layman, which is the holder claim in the Scheduled amount of $2,303,637.00 secured by a junior lien recorded with the Stanislaus County

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483          1/20/2015 8:30 AM
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

14-00843-FLK11   Doc 261   Filed 01/20/15   Entered 01/20/15 11:13:58   Pg 6 of 62

Recorder as Doc – 2013-0041669-00 on May 14 2013, which encumbers substantially all of the Debtor's California real property.

9. **"Approval Date"** means the date on which an order approving the Debtor's Disclosure Statement, or an amended version thereof, is entered by the clerk on the Court's docket.

10. **"Assets"** The term Assets includes and means any property of the Estate and expressly includes all rights, titles and interests vested in the Debtor on the Petition Date, excluding property excluded by Bankruptcy Code § 541 from the Estate.

11. **Available Cash"** means all Cash of the Estate, at any given time, available to be distributed to the holders of Allowed Claims less (a) the amount of cash to be reserved in accordance with the Budgets attached hereto currently estimated to be necessary to fund continued operations of the Debtor and to adequately fund the administration of this Plan and the Chapter 11 Case on and after the Effective Date and (b) the amount of Cash deposited into the Disputed Claims Reserve; provided, however, that Available Cash shall not include collateral security or any proceeds of collateral securing any Allowed Secured Claims.

12. **"Bankruptcy Code"** or **"Code"** means Title 11 of the United States Code, as now in effect or hereafter amended. All citations in this Plan to section numbers are to the Code unless otherwise expressly indicated.

13. **"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Eastern District of Washington or, if such court ceases to exercise jurisdiction over the Reorganization Case, such court or adjunct thereof that exercises jurisdiction over the Reorganization Case in lieu of the United States Bankruptcy Court for the Eastern District of Washington.

14. **"Ballot"** The term Ballot shall mean the form distributed to holders of Claims and Interests impaired under the Plan as defined in section 1124 of the Code for purposes of the holders of such Claims and Interests indicating their respective acceptance or rejection of the Plan along with the amount and class of their respective Claims or Interests.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 7 of 62

**15.** **"Bankruptcy Rules"** or **"Rules"** means, collectively (a) the Federal Rules of Bankruptcy Procedure and (b) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Washington, as now in effect or hereafter amended.

**16.** **"Bar Date"** means the last date for filing Claims, which was 60 days after service of the notice thereof on creditors.

**17.** **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**18.** **"Case"** means the within Chapter 11 case, known as <u>In re River-Bluff Enterprises, Inc.</u>, Case No. 14-00483-FLK11, pending before the United States Bankruptcy Court, Eastern District of Washington.

**19.** **"Cash"** means cash and cash equivalents.

**20.** **"Causes Of Action"** means all claims, demands, and causes of action owned by the Debtor as of the Petition Date or acquired post-petition by the Debtor, including, without limitation, all claims and actions under Chapter 5 of the Bankruptcy Code, for the avoidance and recovery of preferential or fraudulent transfers or post-petition transfers not approved by the Bankruptcy Court.

**21.** **"Chase"** means JP Morgan Chase Bank, N.A., the holder of two separate Secured Claims secured by the Plaza Apartments for one claim and by Sierra Manor for the other claim.

**22.** **"Chase Plaza Apartments Secured Claim"** means the secured claim of JP Morgan Chase Bank, N.A. in the Scheduled amount of $1,209,240.00.

**23.** **"Chase Plaza Apartments Loan"** means that certain loan which is the basis for the Chase Plaza Apartments Secured Claim.

**24.** **"Chase Plaza Apartments Security Documents"** means those loan documents which evidence Chase's security interest in the Plaza Apartments and related collateral.

**25.** **"Chase Sierra Manor Secured Claim"** means the secured claim of JP Morgan Chase Bank, N.A. in the Scheduled amount of $1,382,281.00.

-8-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
**DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION**
1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 8 of 62

26.    **"Chase Sierra Manor Loan"** means that certain loan which is the basis for the Chase Sierra Manor Secured Claim.

27.    **"Chase Sierra Manor Security Documents"** means those loan documents which evidence Chase's security interest in Sierra Manor and related collateral.

28.    **"Claim"** means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured; or, a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is an equitable remedy or is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

29.    **"Claimants"** or **"Creditors"** means persons or entities holding Allowed Claims.

30.    **"Class"** means any grouping into which Allowed Claims and Interests are classified pursuant to Article III of the Plan.

31.    **"Code"** means and refers to title 11, United States Code, 11 U.S.C. § 101, et seq.

32.    **"Confirmation"** means the entry by the Bankruptcy Court of the Confirmation Order.

33.    **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on the Court's docket.

34.    **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan under Section 1129 of the Bankruptcy Code.

35.    **"Contested"**   means a Claim against the Debtor (a) that is listed in the Debtor's schedules of liabilities as disputed, contingent, or unliquidated, (b) that is listed in the Debtor's schedules of liabilities as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent the proof of claim exceeds the scheduled amount, (c) that is not listed in the Debtor's Schedules of liabilities but as to which a

proof of claim has been filed with the Bankruptcy Court, or (d) as to which an objection to claim, adversary proceeding or other lawsuit has been filed against any Creditor by the Estate on or before the Objection Deadline set by the Bankruptcy Court.

36.     **"Creditor"** means any person or entity holding an Allowed Claim or Claims against the Debtor.

37.     **"Debtor"** means River-Bluff Enterprises, Inc., a California corporation.

38.     **"Debtor in Possession"** means the Debtor, when acting in the capacity of the representative of the Estate in the Case.

39.     **"Disallowed Claim"** means any Claim (or any portion thereof) against the Debtor which has been disallowed pursuant to the provisions of the Code, including, without limitation, any Claim disallowed pursuant to § 502(e) of the Code.

40.     **"Disclosure Statement"** means the Disclosure Statement to Accompany Debtor's Chapter 11 Plan prepared by the Debtor as required by Section 1125 of the Bankruptcy Code and approved by an Order of the Bankruptcy Court.

41.     **"Disbursing Agent"** means the Debtor, or the Reorganized Debtor acting as agent on behalf of the Debtor.

42.     **"Disputed Claim"** means a Claim as to which a proof of claim has been Filed or deemed Filed under applicable law, as to which an objection has been or may be timely Filed by the Debtor or Reorganized Debtor and which objection, if timely Filed, has not been withdrawn on or before any date fixed for Filing such objections by the Plan or Order of the Bankruptcy Court and has not been overruled or denied by a Final Order.  Prior to the time that an objection has been or may be timely Filed, for the purposes of this Plan a Claim shall be considered a Disputed Claim in its entirety if:  (i) the amount of the Claim specified in the proof of claim exceeds the amount of any corresponding Claim scheduled by the Debtor in its Schedules of Assets and Liabilities; (ii) any corresponding Claim scheduled by the Debtor in its Schedules of Assets and Liabilities has been scheduled as disputed, contingent, or unliquidated, irrespective of the amount scheduled; or (iii) no corresponding Claim has been scheduled by the Debtor in its Schedules of Assets and

-10-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483          1/20/2015 8:30 AM
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 10 of 62

Liabilities. Notwithstanding the foregoing, a Claim is not a Disputed Claim if it is an Allowed Claim in this Plan.

43.     **"Distribution"** means the consideration paid or transferred to the holder of a Claim or Interest in satisfaction of such Claim or Interest in accordance with the Plan.

44.     **"Effective Date"** means a Business Day, selected by the Debtor that is no later than sixty (60) days after the Confirmation Date.

45.     **"Equity Security"** or **"Interest"** means the shares of stock evidencing an ownership interest in the Debtor.

46.     **"Equity Security Holder"** means a holder of an Equity Security or Equity Interest in the Debtor.

47.     **"Estate"** means the estate created pursuant to section 541 of the Bankruptcy Code upon the commencement of in the Chapter 11 case for the Debtor under Section 541 of the Bankruptcy Code.

48.     **"Estimated Amount"** means the maximum amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim (or Class of Claims), against the Debtor which is contingent, unliquidated or disputed, for the purpose of: (a) allowance under § 502(c) of the Bankruptcy Code; (b) assisting the Bankruptcy Court in making the findings required for Confirmation of this Plan pursuant to §§ 1129(a)(7)(A)(ii) and (a)(11) and, if necessary, §§ 1129(b)(1) and (2) of the Code; or (c) temporarily allowing a Contested Claim or Contested Interest solely for the purpose of accepting or rejecting the Plan pursuant to Bankruptcy Rule 3018(a).

49.     **"File"** or **"Filed"** means filed with the Bankruptcy Court in the Case.

50.     **"Final Order"** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Case, which has not been reversed, stayed, modified or amended, and as to which (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal that has been or may

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

be taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

51. **"Guarantors"** means collectively Byron and Rose Haney, Eric and Sue Layman, Marcus and Jeanette Haney, and Roger and Marleta Haney, each who signed personal guarantees on certain secured debts.

52. **"Insider"** means a Person having a relationship with the Debtor within the meaning of Code § 101(31).

53. **"Key Bank"** means US Bank National Association, as Trustee for the Registered Holders of WAMU Commercial Mortgage Securities Trust 2007-SLW, Commercial Mortgage Pass-Through Certificates, Series 2007-3, it successors and assigns, with Key Bank, National Association as its Special and Master Servicer and Berkadia Commercial Mortgage, LLC as primary servicer, the holder of an Allowed Secured Claim secured by the Key Bank Security Documents and holder of the Key Bank Loan Documents.

54. **"Key Bank Loan"** means Loan No. 625955681, under which there is an outstanding balance as of December 29, 2014 of $1,335,898.50.

55. **"Key Bank Loan Documents"** means all existing and future loan agreements, promissory notes, guaranty agreements, pledges, security agreements, assignment of leases and rents, mortgages, deeds of trust, forbearance agreements, and all other existing or future documents evidencing, securing or executed in connection with the Key Bank Loan relating to Debtor or its affiliates with Washington Mutual Bank, Key Bank or any of their affiliates or their assigns, which are now held, serviced, or administered by Key Bank, together with all other existing and future documents that modify, amend, extend, replace, or otherwise affect any of the foregoing documents, and includes without limitation the Key Bank Note, Key Bank Deed of Trust and Key Bank Security Documents.

56. **"Key Bank Note"** means that certain promissory note executed in connection with the Key Bank Loan between the Debtor as maker and Washington Mutual dated December

-12-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 12 of 62

13, 2006 in principal amount of $1,750,000 together with all its modifications, amendments, extensions, replacements, allonges, or assignments thereto.

57.    **"Key Bank Secured Claim"** means the secured claim of Key Bank in the fully allowed amount of $1,335,898.50 as of December 29, 2014, which is fully Allowed Secured Claim under the terms of the Plan and not subject to any claim, defense, offset, setoff or recoupment of the Debtor or Reorganized Debtor under this Plan and shall not be subject to reconsideration under 11 U.S.C. 502(j).

58.    **"Key Bank Security Documents"** means those loan documents which evidence Key Bank's security interest in 142 N. 9th Street and related collateral described in the loan documents securing the Key Bank Loan, including but not limited to that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated December 13, 2006 signed by Debtor in favor of Washington Mutual Bank and recorded December 22, 2006 in the Stanislaus County, California Recorders Office (the "**Key Bank Deed of Trust**")

59.    **"Lien"** means, with respect to any Asset or property of the Debtor, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind affecting such Asset or property to the extent enforceable under law.

60.    **"Order"** means an order or judgment of the Bankruptcy Court as entered on the docket.

61.    **"Management"** means Roger Haney, Byron Haney, and Eric Layman in their capacity as officers, directors, and shareholders of the Debtor.

62.    **"Medical Building"** means that certain real property, which includes Lots 1, 2, 3, 4, 5, and 6, portions of Lot 8, and Lots 9 and 10, all in Block 55 of the Murray Addition to the City of Ellensburg, County of Kittitas, State of Washington, as per plat thereof recorded in Book 1 of Plats, page 15, on which a three-story, 34541 square foot office building and improvements are located.  The street addresses for the property are 100 E. Jackson St., and 705 and 707 S. Pine Street,, Ellensburg, WA 98926.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION                                                    1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 13 of 62

63.     **"Parking Lot"** means that certain real property, which includes Lots 11 and 12 in Block 55 of the Murray Addition to the City of Ellensburg, County of Kittitas, State of Washington, as per plat thereof recorded in Book 1 of Plats, page 15, which is located adjacent to the Medical Building.

64.     **"Person"** means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, government or any political subdivision, governmental unit (as defined in the Bankruptcy Code) or official committee appointed by the United States Trustee.

65.     **"Petition"** means the voluntary petition filed by the Debtor to initiate the Case.

66.     **"Petition Date"** means March 11, 2014, the date that the Petition was filed.

67.     **"Plan"** means the Debtor's Chapter 11 Plan of Reorganization in this Case and all exhibits and schedules annexed thereto or referred to therein, as the same may be amended, modified, or supplemented from time to time, and any amendment or modification thereof.

68.     **"Plaza Apartments"** means that certain real property improved with a 30 unit apartment complex located at 1317 Colorado Ave., Turlock, California.

69.     **"Pro Rata"** means the proportional amount of any one Claim or Equity Interest in a Class or a group of claims to the aggregate amount of all Claims or Equity Interests in the same Class or group, including Disputed Claims until disallowed.

70.     **"Proof of Claim"** means a statement under oath filed in the Case by a creditor in which the creditor sets forth the amount owed to the creditor and presents sufficient detail to identify the basis of the Claim in accordance with Rule 3001.

71.     **"Priority Claim"** means an Unsecured Claim given priority under Section 507(a) of the Bankruptcy Code.

72.     **"Priority Tax Claim"** means an Allowed Claim for an amount entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

73.     **"Proponent"** means the Debtor.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 14 of 62

74. **"Reorganized Debtor"** means the Debtor, on and after the Confirmation Date, at which time it shall assume all of the rights and obligations of the Debtor together with title to and control of the Debtor's assets and liabilities upon Confirmation of the Plan, as such rights, obligations, assets and liabilities are modified in this Plan.

75. **"Scheduled"** means as set forth on the Schedules of Asset and Liabilities on file with the Bankruptcy Court.

76. **"Schedules of Assets and Liabilities"** means the Schedules of Assets and Liabilities filed by the Debtor with the Bankruptcy Court, as the same have been or may be amended from time to time prior to the Effective Date.

77. **"Secured Claim"** means any Claim secured by a lien, security interest or other charge against property in which the estate has an interest, or which is subject to set-off under Section 553 of the Bankruptcy Code, (a) to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such Secured Claim in the estate's interest in such property, or to the extent of the amount subject to any set-off, as the case may be, or (b) where the holder of the Claim has made an election under Section 1111(b) of the Bankruptcy Code, to the extent of the amount of the Claim.

78. **"Secured Creditor"** shall mean the holder of an Allowed Secured Claim.

79. **"Sierra Manor"** means that certain real property improved by a 37 unit apartment complex and coin operated laundry located at 6500 Jackson Avenue, Riverbank, California.

80. **"Taxes"** means all taxes lawfully levied or assessed by any taxing authority which are lawfully owed by Debtor or the Estate which are (i) specified in Code section 507(a)(7), (ii) unsecured Claims of the Estate for taxes, or (iii) taxes incurred post-petition by the Debtor prior to the date of the Confirmation Order.

81. **"Unclassified Claims"** means the Allowed Amount of: (i) all administrative expenses of the Debtor's Chapter 11 Case, allowed pursuant to Section 503(b) of the Bankruptcy

-15-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION
1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 15 of 62

Code, and (ii) all allowed, unsecured Claims entitled to priority pursuant to Section 507(a)(1), (2), and (8) of the Bankruptcy Code.

82. **"Unsecured Claims"** means the Allowed Amounts of those Claims against the Debtor for which there are no assets of the Debtor serving as security, but not including any Priority Claims.

83. **"Unsecured Creditors"** means Creditors holding allowed, unsecured Claims against the Debtor for which there are no assets of the Debtor serving as a security, but not including priority Claims.

84. **"U.S. Bank"** means U.S. Bank National Association, the holder of an Allowed Secured Claim secured by Medical Building and guaranteed by the Guarantors.

85. **"U.S. Bank Loan"** means the loan evidenced by that certain Construction Loan Agreement between U.S. Bank and the Debtor dated October 30, 2007, as subsequently modified by the U.S. Bank and the Debtor prior to the filing of the Petition, with an original loan commitment amount of $5,225,000.00, as evidenced by the U.S. Bank Note.

86. **"U.S. Bank Note"** means that certain Installment or Single Payment Note with an original stated principal balance of $5,225,000 dated October 30, 2007, and originally due and payable on April 1, 2009, as subsequently modified by the U.S. Bank and the Debtor prior to the filing of the Petition.

87. **"U.S. Bank Secured Claim"** means the secured claim of U.S. Bank in the claimed amount of $5,439,995.55 as of the Petition Date, which amount has increased postpetition.

88. **"U.S. Bank Security Documents"** means those loan documents which evidence U.S. Bank's security interest in the Medical Building Street and related collateral, including that certain Washington Deed of Trust, Security Agreement and Assignment of Rents and Leases recorded with the Kittitas County Auditor as document 200711210006 on November 21, 2007, and that UCC Financing Statement number 12-7311752241 filed with the California Secretary of State on May 2, 2012.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483                     1/20/2015 8:30 AM
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

14-00843-FLK11     Doc 261     Filed 01/20/15     Entered 01/20/15 11:13:58     Pg 16 of 62

Any term used in this Document that is not defined in either in Article III, or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

**IV.**

**CONFIRMATION AND VOTING**

A creditor or interest holder may vote to accept or reject the Plan by filling out and mailing to the Debtor's counsel the form of ballot which has been provided herewith.

The Court has fixed the date set forth in the attached notice as the last date by which ballots must be received by the Debtor. In the discretion of the Debtor and subject to review and determination by the Court, votes received by the Debtor after that date may not be counted. Whether a creditor or interest holder votes on the Plan or not, it will be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the required majorities of classes of creditors and interest holders and/or is confirmed by the Court. Absent some affirmative act constituting a vote, such creditor or interest holder will not be included in the tally. Allowance of a claim or interest for voting purposes, and disallowance of any claim or interest for voting purposes does not necessarily mean that all or a portion of the claim or interest will be allowed or disallowed for distribution purposes.

The Bankruptcy Court will confirm the Plan if the requirements of 11 U.S.C. § 1129(a) are satisfied. That provision requires, *inter alia*, that: (a) With respect to each class of claims or interest, each holder of a claim or interest in that class has accepted the plan or will receive or retain under the plan on account of such claim or interest, property of a value that is not less than the amount such holder would receive if the Debtor was to liquidate under Chapter 7; (b) Confirmation of the plan is not likely to be followed by a liquidation or the need for further reorganization; and (c) The plan be accepted by each class of claims or interests that is impaired by the plan, and/or the plan does not discriminate unfairly and is fair and equitable to impaired classes that have not accepted the plan.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 17 of 62

To confirm the Plan, the Bankruptcy Court must determine whether the Plan has been accepted by each impaired class entitled to vote on the Plan. Impaired classes entitled to vote on the Plan are those classes of claims whose legal, equitable or contractual rights are altered, as defined under 11 U.S.C. §1124. If a class of claims or interests are not impaired under a plan, then each holder of a claim or interest of such class are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interest of such class is not required. 11 U.S.C. § 1126(f).

Under 11 U.S.C. § 1126(c), an impaired class of claims is deemed to have accepted the Plan if at least two-thirds in amount of those claims who vote and more than one-half in number of those claims who vote have accepted the Plan. An impaired class of equity interests is deemed to have accepted the Plan if the Plan has been accepted by at least two-thirds in amount of the allowed equity interests who vote on the Plan. Only the votes of those creditors or interested parties whose ballots are timely received may be counted in determining whether a class has accepted the Plan.

You are, therefore, urged to fill in, date, sign and promptly mail the enclosed ballot which was furnished to you. Please be sure to properly complete the form and legibly identify the name of the claimant or interest holder.

In the event that one or more impaired classes does not accept the Plan, the Debtor intends to request that the Court confirm the Plan pursuant to 11 U.S.C. § 1129(b). A plan may be confirmed despite the failure of a class of claims or interests to accept the plan upon request of the proponent of the plan if the Court determines that the plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted the plan. The condition that a plan be fair and equitable with respect to such nonaccepting classes includes certain requirements set forth in 11 U.S.C. § 1129(b) (2).

## V.

## NATURE AND HISTORY OF THE DEBTOR

The Plan provides for the reorganization of Debtor's estate, pursuant to the terms and conditions more fully set forth in the Plan. The following is a description of the nature of the

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

business being reorganized under the Plan, including a summary of competitive industry conditions and Debtors' role in the industry. Along with the financial information included in this Disclosure Statement, the description is intended to provide an analysis of the nature of Debtors' property and business.

### A. Pre-Petition Background and Description of Debtors' Business.

The Debtor was formed in May of 1963 under the laws of the State of California, and has operated as the owner and operator of various real properties in California since that time. In specific, in July 1986 the Debtor acquired the real property at 142 N 9th Street, and has operated it since that time. In 2005 the Debtor acquired the Plaza Apartments, and has operated them since that time, and in September 1968 the Debtor purchased real property and constructed Sierra Manor and has operated them since that time.

#### 1. Acquisition and Construction of the Medical Building

In the spring of 2005, Kittitas Community Hospital("KCH") contacted Dr. Byron Haney and informed him of a need for a medical building in Ellenburg, Washington. The Debtor offered to construct and lease a structure to KCH. A.I.A Architect of Seattle were retained to design a structure with approximately 34,000 square feet of space. The Debtor contributed the land and initial site work, demolition, and building construction costs of approximately $2,000,000.00. US Bank provided the US Bank Loan on October 20, 2007 to fund the completion of construction of the Medical Building. Huff Construction of Modesto California ("Huff") was hired to build the three story structure that would be the Medical Building.

As a result of problems associated with the Debtor's initial leasing agent for the proposed Medical Building resulted in KCH not proceeding with its original intent to lease in the Medical Building.

The leasing agent was able to deliver the Washington Department of Social and Health Services ("DSHS"). as a tenant for the Medical Building prior to completion, but to obtain the leasing commitment from DSHS required that an additional elevator be installed for its exclusive use. On or about May of 2008 US Bank representatives verbally informed the Debtor that a current

-19-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 19 of 62

appraisal of the Medical Building resulted in a loan to value ratio of below 75%, and therefore US Bank would provide no further funding under the US Bank Loan. At the time US Bank terminated funding, it had extended funds in the total amount of $4,858,442.06.

Aware that a failure to complete the Medical Building would result in no tenants and therefore no income, Huff agreed to complete the Medical Building.

Yakima Valley Memorial Hospital ("YVMH") was also interested in leasing space in the Medical Building, but required certain tenant improvement be included in any leasing arrangement. In order to fund the tenant improvements required by YVMH, members of the Haney Family invested $141,288.00 toward tenant improvements for YVMH. Additionally, in order to continue working on the Medical Building, Huff requested the payment of $200,000.00 to pay sub contractors hired to completed the Medical Building. An investor named Mark Grover loaned the Debtor $200,000.00 to pay Huff the funds required to retain and pay the necessary subcontractors.

The total cost to complete the Medical Building came to approximately $9.2 million. Accordingly, the Debtor's out of pocket investment in the Medical Building is approximately $4.4 million. To finance the additional investment in the Medical Building, the Debtor refinanced its California real estate, and the Guarantors also had Alpine refinance its real properties as well.

### 2. US Bank's Alleged Involvement in the Operations of the Debtor

The Debtor was unable to pay the US Bank Loan when it initially matured in 2009. US Bank subsequently amended the US Bank Loan via multiple amendments, the last amendment extending the loan maturity date to September 30, 2011.

After the loan had again matured, representative of US Bank directed the Debtor to open an new checking account at the Standiford US Bank branch, and transfer all proceeds from the tenants of the Medical Building that were being held at the Modesto Commerce Bank into the US Bank account. Thereafter, all rents and proceeds generated from the Medical Building were deposited into the US Bank account. There is currently believed to $124,092.62 being held in that US Bank account.

-20-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 20 of 62

1    Additionally, representatives of US Bank directed the Debtor to terminate its historical

2  accounting firm Culbertson Jordan, and retain the firm of Grimbleby Coleman to perform

3  accounting functions for the Debtor.  Representatives of US Bank also directed that the Debtor hire

4  Carlson, Boyd & Bailey to represent the Debtor in connection with workout negotiations with US

5  Bank.

6    U.S. Bank disputes that is has been involved or controlled the operations of the Debtor at

7  any time.

8    **B.    <u>US Bank Seeks Appointment of a Receiver.</u>**

9    On May 31, 2012, US Bank filed that certain Complaint (General Receivership) against the

10  Debtor in the Superior Court of the State of Washington for Kittitas County (the "State Court"),

11  identified as Case No. 12-2-00169-6 (the "Receivership Action").  The Bank also served a notice

12  of default, pursuant to RCW 61-24-081(8) to be served on the Debtor on June 8, 2012.

13    On July 14, 2012, US Bank filed its Motion for Appointment of General Receiver (the

14  "Receivership Motion") in the Receivership Action.

15    **C.    <u>The Debtor's First Chapter 11 Filing.</u>**

16    In order to stay the receivership proceedings in state court, the Debtor a Chapter 11 was

17  initiated by a voluntary petition filed on July 20, 2012 in the United States Bankruptcy Court for

18  the Eastern District of California under case no. 12-92017-E-11 (the "First Case").

19    Due in large part to illness of counsel for the Debtor in the First Case, no affirmative action

20  was taken on the Debtors behalf, and on November 3, 2012 the First Case was dismissed on US

21  Bank's motion.

22    **D.    <u>Appointment of the Receiver; Administration of the Receivership Estate.</u>**

23    On December 3, 2012, the State Court entered that certain Order Appointing General

24  Receiver with regard to the Medical Building.

25    Subsequently, on February 19, 2013, the State Court ordered that the Parking Lot, which

26  was not part of US Bank's collateral, be included in the receivership estate.

27

28

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483                1/20/2015 8:30 AM
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

Sometime later in 2013, the Receiver received an offer from Watermark Equity LLC ("Watermark") to purchase the Medical Building and the Parking Lot for a total price of approximately $4.2 million.  Based on tax assessed values, the Receiver allocated the purchase price as follows: (1) $4,072,530 to the Medical Building and associated personal property; and (2) $127,470.00 to the Parking Lot.

The Receiver filed a motion with the State Court to approve overbid procedures and to approve the sale to Watermark.  On February 25, 2014 the State Court entered that certain Order Approving Overbidding Procedures in Connection with the Sale of Property which provided a deadline of March 10, 2014 for the submission of any additional bids for the Medical Buildng and Parking Lot.  No overbids were received by the March 10, 2014 deadline.

In order to protect its $9.2 million investment in the Medical Building and prevent it and the Parking Lot's sale for a total of $4.2 million, the Debtor filed the Case.

**E.** **Employment of Professionals by the Estate**

On March 26, 2014 an application of employment was filed to employ Kimel Law Offices to act as general insolvency counsel for Debtor.  On April 22, 2014 an order was entered approving the employment of Kimel Law Office as counsel for the Debtor and Debtor in Possession.

On March 28, 2014 an application was filed to employ Culbertson Jordan as accountants for the Debtor.  On April 22, 2014 an order was entered approving the employment of Culbertson Jordan as accountants for the Debtor and Debtor in Possession.

On May 20, 2014, the Debtor an application was filed to employ James Perkins of Larson, Berg & Perkins as special counsel in connection with the Receiver Fee and Termination Motion, as that term is defined herein.  As Mr. Perkins had represented the Debtor in connection with the Receivership Action, he was familiar with the issues raised by the Debtor in objection to the Receiver Fee and Termination Motion.

On June 13, 2014, US Bank filed an objection to the application to employ Perkins as special counsel.  A hearing on July 21, 2014, the Court approved the employment of Mr. Perkins as special counsel.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 22 of 62

**F.    Non- Formation of the Creditors Committee**

On March 13, 2014, the Office of the United States Debtor filed a Notice of Non-Appointment of a creditor's committee in Debtor's case

**G.    Insiders Of The Debtor**

Pursuant to the definition of an insider provided by Bankruptcy Code § 101(31), as of the Petition Date the following individuals or entities are insiders of the Debtor: Byron and Rose Haney, Eric and Sue Layman, Marcus and Jeanette Haney, Roger and Marleta Haney. Although there cross ownership between the Debtor and Alpine[1].

**H.    Other Post-Petition Matters.**

1.    **US Bank Motion For Relief From Stay and to Excuse Turnover By the Receiver**

On March 14, 2014, US Bank filed that certain Motion for Relief From Stay as to the Medical Building and the Parking Lot, in order to allow the sale of those two properties to proceed, as well as that certain Motion to Excuse Compliance with 11 U.S.C. § 543. US Bank requested that the matters be heard on shortened notice.

On March 19, 2014, the Debtor filed its opposition to the shortening of time and to both the motion to lift the stay and excuse the turnover by the receiver.

After a hearing on all matters on March 21, 2014, the Court granted the US Bank's motion to shorten time, and then denied both the motion to lift the stay and the motion to excuse compliance with Code § 543. The Court additionally continued the hearing on US Bank's motion for relief form stay to a final hearing on April 8, 2014. That hearing was subsequently continued by the agreement of the parties to a date after a hearing on the Debtor's motion for Interim Use of Cash Collateral.

---

[1] Debtor believes that Alpine would be considered an "affiliate" of the Debtor, as that term is defined under Code §101(2) as Alpine would be considered as indirectly owning 20 percent or more of the voting securities of the Debtor.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 23 of 62

2. **Debtor's Extension of Time to File Documents**.

On March 24, 2014, the Debtor filed its Motion to Extend Time to File its Schedules and Statement of Affairs to April 8, 2014.

On April 8, 2014, the Debtor filed its Schedules and Statement of Affairs.

3. **The Debtor's Motion for Interim Use of US Bank's Cash Collateral.**

US Bank and the Debtor attempted to negotiate an agreed order for the interim use of cash collateral, but were unable to agree on the form of the order. Accordingly, on April 9, 2014, the Debtor filed its Motion to Use Cash Collateral and notice (the "Interim Cash Collateral Motion") and requested that the matter be heard on shortened notice. On April 14, 2014, US Bank filed its objection to the Interim Cash Collateral Motion.

After a hearing on April 15, 2014, the Court requested that the parties negotiate a cash collateral order and set a status conference for June 10, 2014 and June 17, 2014 for an evidentiary hearing if necessary.

On April 29, 2014, the Court entered an order authorizing interim use of US Bank's cash collateral.

4. **The Debtor's Motion for Interim Use of Chase and Berkadia's Cash Collateral**

On May 1, 2014, the Debtor filed motions seeking authorization for the continued use of the cash collateral of Chase and Berkadia with regard to the continued maintenance and operation of 142 N. 9th Street, the Plaza Apartments, and Sierra Manor.

On May 20, 2014, the Court held a telephonic conference on the motions to use the Chase and Berkadia cash collateral. Having received no objections to the motions, on June 5, 2014 the court entered order authorizing the use of Chase and Berkadia's cash collateral. The budgets approved by the Court with regard to the operation of 142 N. 9th Street, the Plaza Apartments, and Sierra Manor are attached hereto as Exhibit "2" and incorporated herein by reference.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

5. **The Receiver's Motion for Approval of Final Unpaid Fees of Receiver and Counsel and Motion for Authority to File Motion to Terminate Receivership (the "Receiver Fee and Termination Motion")**

On April 16, 2014, the Receiver filed the Receiver Fee and Termination Motion. The Debtors filed an objection through proposed special counsel on May 6, 2014. The matter was currently set for hearing on August 11, 2014 at 10:00 a.m.

On September 11, 2014, the Court entered an order awarding Revitalization Partners LLC fees of $13,775.00 and expenses of $109.76 as final fees for serving as receiver, and awarded Ball Janik LLP fees of $13,131.00 and expenses of $593.65 as final compensation as counsel for the receiver.

6. **The Debtor's Continued Operation of the Debtor's Business.**

Since the filing of the Petition, the Debtor regained possession of the Medical Building, and has been in the process of evaluating the condition of the Medical Building, as well as seeking out additional prospective tenants in order lease out the remaining space in the Medical Building.

With regard the 142 N. 9th St, the Plaza Apartments and Sierra Manor, the Debtor has continued to operate those properties in the ordinary course of business.

As Evidenced by the budgets attached as Exhibit "4" hereto, 142 N. 9th St, the Plaza Apartments and Sierra Manor are expected to operate on a positive cash flow basis during the period of the Debtor's operation as debtor in possession.

I. **U.S. Bank's September 8th Motion For Relief From Stay and Mediation Between the Debtor and U.S. Bank.**

On September 8, 2014, U.S. Bank again filed a motion seeking relief from the automatic stay and abandonment of the Medical Building from the bankruptcy estate. On September 24, 2014 the Debtor filed an objection to the motion. On October 9, 2014, the Court held a hearing on the motion for relief from stay. On October 10, 2014, the Court issued its ruling denying the motion, and finding that the parties were not far apart based o the economics of the case, referred the matter to Judge Frederick Corbit for mediation. On October 14, 2014 and order was entered

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 25 of 62

appointing Judge Corbit as the mediation judge, and after a status conference on October 21, 2014, the mediation was set for November 14, 2014 in Spokane.

At the mediation on November 14, 2014, the parties each signed off on a mediation term sheet which the Debtor believes that, now with the support of U.S. Bank, will allow the Plan to be confirmed on a consensual basis. The terms of the mediation term sheet have been incorporated into the Plan which is attached hereto as Exhibit "1", and incorporated herein by reference.

## VI.

## FINANCIAL DISCLOSURES DURING THE CASE

On or about April 8, 2014, the Debtor filed its Schedules in the Case. The Schedules and the amendments thereto provide substantial financial information about the assets and liabilities of the Debtor's Estate as of the Petition Date. The Schedules are available for inspection during normal business hours at the Clerk's office of United States Bankruptcy Court located in the 401 E. Yakima Ave., Yakima, Washington 98901, or may be accessed via the internet at the bankruptcy website for the Eastern District of Washington at www.waeb.uscourts.gov.

In addition to the Schedules, both the Debtor and the Debtor have been preparing interim monthly operating statements in accordance with the requirements of the United States Debtor. Copies of the interim statements may be accessed via the internet at the bankruptcy website for the Eastern District of Washington at www.waeb.uscourts.gov/.

A.    Assets of The Debtor

The following is a summary of the Debtor's assets and liabilities. Asset values are based upon the Debtor's estimate of either the fair market value of the assets as of the date of filing of the Case or current value for cash.

| Assets | Estimated Value |
|---|---|
| Real Property | $8,630,000.00 |
| Tangible  Personal Property | $4,400.00 |

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483    1/20/2015 8:30 AM
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 26 of 62

| | |
|---|---|
| Cash (comprised of rent proceeds currently being held by US Bank) | $124,092.62 |
| Other Cash – US Bank cash collateral (held at Chase) | $39,824.44 |
| Cash held by KLO in trust | $25,537.00[2] |
| Receivables From Shareholders | $1,305,000.00 |
| Other Cash – other lenders cash collateral | $59,736.92[3]. |
| Receivable from Non Shareholder[4] | $94,780.00 |
| Total: | $10,283,370.06 |

B. **Liabilities of the Debtor**

1. **Administrative Liabilities.**

  The Debtor believes that, as of September 23, 2014, the following administrative liabilities are outstanding:

| Creditor | Amount |
|---|---|
| Kimel Law Offices | $10,000.00[5] |
| Culbertson Jordan | $12,000.00[6] |
| Revitalization Partners LLC | $13,884.76 |
| Ball Janik LLP | $13,724.65 |

---

[2] As of September 23, 2014.

[3] Comprised of $53,736.92 in Wells Fargo DIP checking account and $5,587.94 in a Wells Fargo DIP savings account.

[4] Scheduled as receivable for tenant improvements from Yakima Medical Group

[5] Estimated as of 9/24/14.

[6] Estimated s of 9/24/14.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1

2.    **Allowed Priority Unsecured Claims.**

2          As of June 30, 2014, the Debtor believes that there are no Allowed Priority

3  Unsecured Claims which are owed by the Debtor.

4

3.    **Secured Claims.**

5          As of June 30, 2014, the Debtor owed the following Filed or Scheduled secured

6  claims which the Debtor believes to be valid secured claims against the Debtor:

| Creditor | Amount | Collateral |
|---|---|---|
| Key Bank | $1,385,240.00 | 142 N. 9th Street |
| Chase | $1,382,281.00 | Sierra Manor |
| Chase | $1,209,240.00 | Plaza Apartments |
| US Bank | $5,441,431.75[7] | Medical Building |
| Alpine Townhouse Apartments LLC | $2,303,637.00[8] | Junior lien against all of the Debtors California real properties |
| Total | $11,721,829.75 | |

16

4.    **General Unsecured Claims.**

17          Pursuant to the Claims Register in the Case, the Debtor estimates that there is

18  approximately $663,670.00 in Claims that will be entitled to be treated as General Unsecured

19  Claims owed by the Debtor.  A detailed list of these Claims are attached hereto as Exhibit "3".

---

[7]  This would be US Bank's total claim to be filed in the case per e-mail correspondence of 7/7/14.

[8]  Again, this is the total Scheduled Claim.  The Allowed Secured claim is anticipated to be $291,162.00

-28-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483                    1/20/2015 8:30 AM
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 28 of 62

# VII.

## DESCRIPTION OF THE PLAN;

## CLASSIFICATION OF CLAIMS AND INTERESTS;

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

The following provisions are the terms of the Plan. The terms of the Plan will be controlling on the Creditors in the event that the Plan is confirmed. Therefore, all Creditors are urged to read all the Plan provisions carefully in their entirety.

### A.    What is the Purpose of the Plan

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B.    Classification of Claims.

The Plan provides for the following classification for Claims:

| | |
|---|---|
| Class 1 | Allowed Secured Claims for Property Taxes |
| Class 2 | Allowed Unsecured Priority Claims |
| Class 3 | Allowed Secured Claim of Key Bank |
| Class 4 | Allowed Secured Claim of Chase (Plaza Apartments) |
| Class 5 | Allowed Secured Claim of Chase (Sierra Manor) |
| Class 6 | The Allowed Secured Claim of US Bank |
| Class 7 | Allowed Secured Claim of Alpine |
| Class 8 | Allowed General Unsecured Claims |
| Class 9 | The Allowed Unsecured Claim of Alpine |
| Class 10 | The Allowed Unsecured Claim of Marcus Haney |

-29-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483                                    1/20/2015 8:30 AM
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 29 of 62

| Class 11 | Shareholder Interests |
|----------|----------------------|

### C. Unclassified Claims.

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

#### 1. Administrative Expenses.

Administrative expenses are costs or expenses of administering the Debtors chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtors estimated administrative expenses as of the Confirmation Date and their proposed treatment under the Plan:

| Claimant | Amount | Treatment |
|----------|--------|-----------|
| Kimel Law Offices | $15,000.00 (estimated) | Paid post-confirmation out of operations or amounts set aside and held pursuant to the cash collateral orders in place in the Case |
| Culbertson Jordan CPA's | $10,000.00 | Paid post-confirmation out of operations or amounts set aside and held pursuant to the cash collateral orders in place in the Case |
| Post-Petition Tax Obligations | $0.00 | |
| US Debtor Quarterly Fees | $4,875.00 | Paid on the Plan Effective Date |

-30-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483          1/20/2015 8:30 AM
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 30 of 62

1

2              2.       **Priority Tax Claims.**

3         Priority tax claims are unsecured income, employment, and other taxes described by §

4    507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it

5    must receive the present value of such claim, in regular installments paid over a period not

6    exceeding 5 years from the order of relief.

7         The Debtor does not believe that there any Filed or Scheduled Claims that would be

8    entitled to treatment as a § 507(a)(8) priority tax claims.  In the event there are any, they will be paid

9    in full within 30 days of the Effective Date of the Plan.

10        **D.      Treatment of Classified Claims under the Plan.**

11             1.       **Basic Structure of the Plan**

12        The proposed Plan is attached hereto as Exhibit "1".

13             2.       **Classification and Treatment of Claims**

14             Section 1123 of the Code requires that the Debtor classify all Claims dealt with in

15    the Plan.  Pursuant to Section 1122 of the Code, the Debtor may place all Claims which are

16    substantially the same in the same Class in the Plan.  Section 1123(a)(4) of the Code requires that

17    the Plan provide the same treatment for all Claims in the same Class, unless the holder of a

18    particular Claim agrees to a less favorable treatment of that Claim.

19             Sections 1123(a)(2) and (a)(3) of the Code require that the Debtor specify in the

20    Plan any Class of Claims that is not "impaired" by the Plan and specify the treatment of any Class

21    of Claims that is "impaired" by the Plan.  Pursuant to Section 1124 of the Code, a Class of Claims

22    is "impaired" by the Plan unless the Plan (i) leaves unaltered the legal, equitable and contractual

23    rights of the holders of the Claims; or (ii) cures any defaults with respect to the Claims for any

24    damages incurred by them as a result of any reasonable reliance by them on contractual provisions

25    or applicable law entitling them to receive accelerated payment after the occurrence of such

26    defaults.  Pursuant to Section 1126(f) of the Code, a Class of Claims that is not impaired by the

27

28
                                                    -31-

Plan is conclusively presumed to have accepted the Plan, and is not entitled to vote on the Plan. As discussed herein, all Classes are impaired under the Plan and therefore entitled to vote on the Plan.

Pursuant to Section 1126 of the Code, a impaired Class of Claims accepts the Plan if the holders of at least two-thirds in amount of and more than one-half in number of the holders of Allowed Claims voting in such Class of Claims vote to accept the Plan. A class of interests accepts the Plan if the holders of at least two-thirds in amount of the Allowed Interests voting in such class of interests vote to accept the Plan.

The Debtor has requested that the Bankruptcy Court confirm the Plan under the provisions of Section 1129(a) - (e) of the Code. Section 1129(a) sets forth relevant criteria which a Plan must satisfy in order for the Debtor to obtain confirmation for the Plan. The Document does not recite all of the criteria; parties in interest are referred to Section 1129. The Document does, however, state that confirmation standard set forth in Section 1129(a)(7) which provides that the Plan must distribute to each holder of a claim or interest in an impaired class of Claims or interest which has not accepted the Plan, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7. This is known as the "best interests" test. As set forth in Section IX herein, the Debtor believes that the Plan satisfies this requirement.

Among the other confirmation standards are those set forth in Section 1129(a)(8) and (b)(1)-(2) which provide that the Plan may be confirmed only if the Plan is accepted by each class of impaired Claims or interests or if the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired Class that did not vote in favor of the Plan. The discussion of the relevant Code provisions concerning the fair and equitable treatment of any secured creditors is set forth below. With respect to a class of unsecured Claims, in order to be fair and equitable, a plan must provide that each holder of such a Claim will receive or retain, as of the Effective Date, property of a value equal to the allowed amount of such Claim or that the holder of any junior claim or interest will not receive or retain any property under the Plan unless the senior claim

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1  holder is paid in full.  This last requirement is referred to as the "absolute priority rule."  With

2  respect to a class of interests, fair and equitable means that the Plan provides each interest holder

3  with property of a value, as of the Effective Date, equal to the greater of any fixed liquidation

4  preference, any fixed redemption price or the value of such interest.  Alternatively, with respect to

5  interest holders, a Plan is fair and equitable if it comports with the absolute priority rule.  The

6  absolute priority rule specifies that no junior class of claims or interests may receive or retain any

7  property under a plan unless senior classes are paid in full.  Additionally, with respect to Secured

8  Claims, Unsecured Claims and Interests, the Court must find that the Plan is in fact fair and

9  equitable, as such terms are commonly understood.

10          Under the Plan, "equity" is retaining an interest in the Reorganized Debtor.  The

11  plan provides that holders of Allowed Unsecured Claim will receive on account of the claims

12  property of a value as of the effective date, equal to the allowed amount of their claims.

13  Accordingly, the absolute priority rule is satisfied under the terms of the Plan.

14          The Plan designates 11 (11) classes of Claims and Interests.  The Plan has

15  established these Classes based upon the relative rights of the holders of the Claims and Interests

16  against the Debtor.  The classification and treatment of Allowed Claims under the Plan are

17  summarized as follows:

18

19          1.      **Class 1 Claims (Allowed Secured Claim for Property Taxes).**

20          Class 1 consists of any and all property taxes. Class 1 is impaired under the Plan.  The Plan

21  provides the following treatment for holders of Allowed Claim 1 Claims:  The Debtor believes that

22  there are no current  in property taxes owed for any of its real properties.  The Holders of the

23  Allowed Class 1 Claims shall retain its liens against the current real properties securing those liens

24  until the Allowed Class 1 Claim has been paid in full.

25          2.      **Class 2 Claims (Unsecured Priority Claims).**

26          Class 2 consists of any and all Priority claims, other than claims of the kind specified in

27  Code Sections 507(a)(1), 507(a)(2) or 507(a)(8).  Holders of Class 2 Claims are unimpaired under

28

-33-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 33 of 62

the Plan. Debtor believes that there are no claims which would qualify as Class 2 Claims, and to date there have been no Claims filed as an unsecured priority claim. In the event there are any Class 2 Claims, then on or before the Effective Date, all Allowed Class 2 Claims will be paid in full, in Cash.

| Class 2 | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| None | claims of the kind specified in Code Sections 507(a)(1), 507(a)(2) or 507(a)(8) | Unimpaired | Payment in Full on the Effective Date of the Plan |

Debtor believes that there are no unsecured priority claims that would qualify as Allowed Class 2 Claims.

3.      **Class 3 Claims (the Allowed Secured Claim of Key Bank).**

(1)      Impairment And Voting.

The Class 3 is impaired under this Plan. The holder of an Allowed Claim in Class 3 is entitled to vote to accept or reject this Plan.

(2)      Allowance and Distribution.

Key Bank's Allowed Class 3 Claim is an Allowed Secured Claim. Key Bank shall have an Allowed Claim in the total amount of $1,335,898.50. The Key Bank collateral was valued at $1,750,000.00 in the Schedules.

On the Effective Date, the Key Bank Loan Documents shall be modified to provide that the Reorganized Debtor shall have the right, only once, during the 24 month period commencing with the Confirmation Date, to defer one of the required monthly payments as provided for under the Key Bank Loan Documents for a period of nine months (the "**Payment Holiday**"), but the Debtor is not required to exercise such Payment Holiday  The deferral may not exceed nine months.  At the end of the deferral period, Debtor shall be obligated to cure the missed payment and shall pay the payment amount plus interest accrued at the non-default interest rate.

-34-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 34 of 62

Debtor shall be required to give the Holder of the Allowed Class 3 Claim ten (10) days written notice prior to exercising its right to the Payment Holiday.

                    (3)    All Other Rights Of Class 3 Claims Unchanged by the Plan.

Notwithstanding anything in the Disclosure Statement, Plan, or the Confirmation Order, or any attachments, supplements, schedules, exhibits or additions to any of the proceeding (collectively the "**Plan Related Documents**"), the Debtor hereby reaffirms and ratifies all Key Bank Loan Documents, as modified by Paragraph 3(2) of Class 3 in Debtor's Second Amended Plan.  To the extent there is a discrepancy between the Plan Related Documents and this Paragraph 3(3), Paragraph 3(3) of the Plan controls.  The Debtor hereby acknowledges and agrees that Key Bank is the holder and servicer of the Class 3 Claims which shall be deemed fully allowed secured claims in the outstanding amount of $1,335,898.50 as of December 29, 2014, and that such amounts are not subject to deduction, demand, claim, defense or setoff, offset, recoupment  or reconsideration of any kind.  Key Bank may add its legal fees, costs, expenses and other advances it incurs in this case to the amounts owed under the Key Bank Loan Documents and Debtor shall reimburse Key Bank for such expenses without further court order.  For the avoidance of doubt: (i) all liens provided under the Key Bank Loan Documents shall be retained, ratified, reaffirmed and be unaffected by the Case;  (ii) the Debtor or its affiliates, including any guarantors of the Key Bank Loan or Key Bank Note shall not be discharged from any liability under the Key Bank Loan Documents by the Plan Related Documents; (iii) after occurrence of an event of default under the Key Bank Loan Documents (excluding the current Case), Key Bank or its agents may exercise any and all rights and remedies against the Debtor or its affiliates or any guarantors of the Key Bank Loan or Key Bank Note as are available at law or in equity without further order from the Bankruptcy Court including, without limitation acceleration, default interest, penalties, costs, damages and other rights allowed under the Key Bank Loan Documents; (iv) the Reorganized Debtor shall continue to bound by and to comply with all terms of the Key Bank Loan Documents, including, but not limited to the receipt of timely payments from the Reorganized Debtor, except as only modified by the Payment Holiday; and (v) the Debtor does not have any claims or causes of

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

action against Key Bank or its predecessors relating in any way to the Key Bank Loan Documents as of the Confirmation Date of this Plan, and therefore: Debtor hereby releases and forever discharges Key Bank and Key Bank's agents, principals, successors, assigns, employees, officers, directors, and attorneys, and each of them, of and from any and all claims, demands, damages, suits, rights, defenses, offsets, or causes of action of every kind and nature that Debtor has or may have as of the Confirmation Date, whether known or unknown, contingent or matured, foreseen or unforeseen, asserted or unasserted, including, but not limited to, all claims for compensatory damages, general damages, special damages, consequential damages, incidental damages, punitive damages, attorney fees, and equitable relief. In furtherance of the releases set forth above, Debtor acknowledges and waives the benefits of California Civil Code Section 1542 (and all similar ordinances and statutory, regulatory, or judicially created laws or rules of any other jurisdiction), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

(4)     Retention of Liens.

Key Bank shall retain its liens against is current collateral.


4.     **Class 4 (the Secured Claim of Chase Secured by Plaza Apartments).**

(1)     Impairment And Voting.

The Class 4 is unimpaired under this Plan. The holder of an Allowed Claim in Class 4 is not entitled to vote to accept or reject this Plan.

(2)     Allowance and Distribution.

The Allowed Class 4 Claim is a secured claim. The Scheduled amount of the Class 4 Claim as of the Petition Date was $1,209,240.00. The Debtor estimates the value of the Class 4 Claim's collateral to be approximately $1,200,000.00 in the Schedules.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11     Doc 261     Filed 01/20/15     Entered 01/20/15 11:13:58     Pg 36 of 62

1    The Debtor shall continue to pay the Allowed Class 4 Claim in accordance with the

2    contractual terms of the Chase Plaza Apartments Loan

3                        (3)     Retention of Liens.

4         Chase shall retain its liens against the Plaza Apartments.

5         5.     **Class 5 Claim (Allowed Secured Claim of Chase secured by Sierra**

6                **Manor).**

7                        (1)     Impairment And Voting.

8         The Class 5 is unimpaired under this Plan.  The holder of an Allowed Claim in Class 5 is

9    not entitled to vote to accept or reject this Plan.

10

11                       (2)     Allowance and Distribution.

12        The Allowed Class 5 Claim is a secured claim.  The Scheduled amount of the Class 5 Claim

13   as of the Petition Date was $1,382,321.00.  The Debtor estimates the value of the Class 5 Claim's

14   collateral to be approximately $1,480,000.00 in the Schedules.

15        The Debtor shall continue to pay the Allowed Class 5 Claim in accordance with the

16   contractual terms of the Chase Sierra Manor Loan documents.

17                       (3)     Retention of Liens.

18        Chase shall retain its liens against Sierra Manor.

19

20        6.     **Class 6 Claim (Allowed Secured Claim of US Bank).**

21                       (1)     Impairment And Voting.

22        The Class 6 Claim is impaired under this Plan.  The holder of an Allowed Claim in Class 6

23   is entitled to vote to accept or reject this Plan.

24                       (2)     Allowance and Distribution.

25        The Allowed Class 6 Claim is a secured claim.  The Filed amount of the Class 6 Claim is

26   $5,439,995.55.  The Filed Claim sets the value of U.S. Bank's collateral at $4,270,072.95.

27        On September 3, 2014, U.S. Bank filed a notice of its election for treatment under Section

28

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1 1111(b)(2) of the Bankruptcy Code.  Under Section 1111(b)(2), when an allowable election is

2 made, then the holder of such a secured claim is required to be treated as a fully secured claim to

3 the extent that the claim is allowed.  Accordingly, U.S. Bank's has an Allowed Secured Claim in

4 the Case in the amount of $5,439,995.55.

5 On the Effective Date, the U.S. Bank's Allowed Secured Claim shall be modified as

6 follows:

7 Loan Amount:  Pursuant to an agreement between the Debtor and U.S. Bank, the

8 contractual balance on the Effective Date, prior to giving effect to the application of the funds U.S.

9 Bank is holding in the $124,092.62 account, shall be a principal balance of $4,783,362.03, actual

10 accrued but unpaid interest as of January 1, 2015 (this amount is $530,789.85 as of December 4,

11 2013, and will be updated as of January 1, 2015, to reflect additional interest accrual and any

12 payments made between December 5, 2014, and January 1, 2015), and prepetition attorney fees of

13 $109,749.07.  This amount shall be the "U.S. Bank Loan Amount."

14 Change in Interest Rate:  Commencing on January 1, 2015, the principal balance of the U.S.

15 Bank Loan shall bear interest at a fixed rate of 7.155 percent per annum.

16 (a) First optional interest rate deduction.  If the Debtor makes a $75,000

17 principal curtailment to U.S. Bank by April 30, 2015 (not including the setoff of

18 $124,092.62 described below), then the interest rate will be reduced by 0.25%.  However, if

19 the interest rate is reduced, the amount of the monthly payments (as described below) will

20 remain unchanged.

21 (b) Second optional interest rate deduction.  If the Debtor makes an additional

22 $75,000 principal curtailment by December 31, 2015 (not including the setoff of

23 $124,092.62 described below), then the interest rate will be reduced by 0.25%.  However, if

24 the interest rate is reduced, the amount of the monthly payments (as described below) will

25 remain unchanged.

26 Change in Payment Schedule:  Beginning in January, 2015, Debtor shall make monthly

27 payments of $39,000.00 per month to U.S. Bank on account of the U.S. Bank Loan.  Beginning in

28

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 38 of 62

January 2016, Debtor shall make monthly payments of $41,000.00 per month to U.S. Bank on account of the U.S. Bank Loan. Each monthly payment shall be applied first to interest accrued on the principal balance on and after January 1, 2015, and, when such interest is fully paid, then the remainder of each payment, if any, shall be applied to the principal balance of the U.S. Bank Loan. The payment each month shall be made so as to be actually received on or before the last business day of such month. The Debtor shall pay the entire remaining balance due (which will include the remaining principal balance, accrued but unpaid interest as of January 1, 2015, and prepetition attorney fees) on U.S. Bank's Loan Amount in full no later than December 31, 2018.

Payment Location: Debtor's payments shall be made payable to "U.S. Bank National Association" and delivered to Alan R. Milster, U.S. Bank National Association – Special Assets Group, SL-MO-T7CP, One U.S. Bank Plaza, St. Louis, MO 63101, Tel: (314) 418-2468, or such other address as U.S. Bank provides in the future to Debtor in writing.

Setoff of Account: Upon the Confirmation Date, U.S. Bank is authorized to setoff the $124,092.62 the Debtor is presently holding in an account at U.S. Bank and apply the $124,092.62 to the principal balance of the U.S. Bank Loan.

(3) Retention of Liens.

The Allowed Class 6 Claim shall retain its lien against the Medical Building and any related collateral as provided for under the U.S. Bank Security Documents.

(4) Grant of Additional Lien.

Within 10 business days of the Confirmation Date, Debtor must execute and deliver a first priority deed of trust to U.S. Bank, in a form reasonably acceptable to U.S. Bank (which U.S. Bank will supply), and which will provide U.S. Bank with insurable title, to pledge the Parking Lot to U.S. Bank as additional collateral for the Debtor's obligations to U.S. Bank. U.S. Bank shall be entitled to record this deed of trust upon receipt.

(5) Loan Documents.

Except to the extent expressly modified by this Plan, all of the existing documents (the "Existing Loan Documents") in favor of U.S. Bank evidencing or related to the Class 6 claim shall

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483          1/20/2015 8:30 AM
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 39 of 62

remain in full force and effect and are reaffirmed in their entirety.  All provisions of the Existing

Loan Documents regarding the cash sweep, the CF Payment (as that term is defined in the Existing

Loan Documents), payment of any monies received by the Debtor from third party loans, or any

obligation of U.S. Bank to provide funding for tenant improvements or any other purpose are

hereby deleted.  U.S. Bank will have no obligation to provide any further funding to the Debtor.

(6)    <u>Financial Reporting</u>.

In addition to any reporting requirements in the Existing Loan Documents, the Debtor shall

also deliver to U.S. Bank by the fifteenth day of the month after month end a month-end balance

sheet, an income statement, a detailed rent roll, leasing and operations narrative report, and bank

account backup documentation for the preceding month.

(7)    <u>Sale of Medical Building Subject to Holder's Right To Credit

Bid</u>.

The Plan contemplates that payment of the balance of the U.S. Bank Loan Amount which

will be due on December 31, 2018, shall be funded by a sale or refinance of the Medical Building

on or before December 31, 2018.  In any proposed sale of the Medical Building, the Holder of the

Allowed Class 6 Claim shall have the right to credit bid the amount of its claim, at the time of the

proposed sale, in accordance with Code § 363(k).  In the event that the Medical Building is not sold

or refinanced by the Debtor on or before December 31, 2018, and the U.S. Bank Loan is not paid in

full, then U.S. Bank shall be free to exercise all of its available rights and remedies under the

Existing Loan Documents.

(8)    <u>Rental of Unleased Space in the Medical Building</u>.

Debtor shall use its best efforts to lease the space in the Medical Building which is currently

not leased.  The following terms shall govern the rental of the unleased space in the Medical

Building:

        (a)    All of the lease terms need to be not less than the economic equivalent of $17.50/square foot on a triple net basis, with a $25/square foot tenant improvement allowance.

-40-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11     Doc 261     Filed 01/20/15     Entered 01/20/15 11:13:58     Pg 40 of 62

(b)     By April 30, 2015, the Debtor must have signed new leases for at least 2,500 square feet.  Those tenants must begin paying rent by August 1, 2015.  These leases must be to bona fide third party tenants.  Debtor's failure to have these leases and to provide evidence of these leases to U.S. Bank will be an event of default under the Existing Loan Documents, as modified by this Plan.  If the Debtor has these leases, then the interest rate will be reduced by 0.25%.  However, if the interest rate is reduced, the monthly loan payment amount will remain unchanged.

(c)     By December 31, 2015, Debtor must have signed new leases for not less than another 2,500 square feet.  Those tenants must begin paying rent by January 1, 2016.  At least 1,000 square feet must be to bona fide third party tenants, but the remaining 1,500 square feet or less may be to an entity owned by or affiliated with Dr. Haney.  Debtor's failure to have these leases and to provide evidence of these leases to U.S. Bank will be an event of default under the Existing Loan Documents, as modified by this Plan.

(9)     Release.

Debtor hereby releases and forever discharges U.S. Bank and U.S. Bank's agents, principals, successors, assigns, employees, officers, directors, and attorneys, and each of them, of and from any and all claims, demands, damages, suits, rights, defenses, offsets, or causes of action of every kind and nature that Debtor has or may have as of the Confirmation Date, whether known or unknown, contingent or matured, foreseen or unforeseen, asserted or unasserted, including, but not limited to, all claims for compensatory damages, general damages, special damages, consequential damages, incidental damages, punitive damages, attorney fees, and equitable relief.  In furtherance of the releases set forth above, Debtor acknowledges and waives the benefits of California Civil Code Section 1542 (and all similar ordinances and statutory, regulatory, or judicially created laws or rules of any other jurisdiction), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

7.     **Class 7 Claim (Allowed Secured Claim of Alpine.**

(1)     Impairment And Voting.

The Class 7 is impaired under this Plan.  As an insider of the Debtor, the holder of an

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 41 of 62

Allowed Claim in Class 7 is not entitled to vote to accept or reject this Plan.

(2)  Allowance and Distribution.

The Allowed Class 7 Claim is a secured claim.  The Scheduled amount of the Class 7 Claim as of the Petition Date was $2,303,673.00.  The Debtor estimates the value of the Class 7 Claim's interest in collateral to be approximately $291,162.00 based upon the values provided for Alpine's collateral in the Schedules.  Accordingly, Alpine is an undersecured creditor in the Case.  Alpine shall have an Allowed Secured Claim in the Case in the amount of $291,162.00.  The remaining balance of $2,012,475.00 shall be treated as and Allowed Class 9 Claim.

On the Effective Date, the Alpine execute new loan and security documents or modify the existing Alpine Loan documents and Alpine Security Documents to provide as follows:  the principal balance of the Alpine Loan shall be restated to $291,162 shall accrue interest on an monthly basis calculated at the non-default interest rate as provided for under the Alpine Loan Documents.  No payments shall be made on account of the Allowed Alpine Secured Claim until the Class 6 Claim and Allowed Class 8 Claims have been paid in full.  Thereafter the Allowed Alpine Secured Claim shall be paid in monthly installments to be determined by the Debtor and Alpine.

(3)  Retention of Liens.

Alpine shall retain its existing liens against its collateral up to the amount of its Allowed Secured Claim.


8.  **Class 8 Claims – Allowed Unsecured Claims (other than Marcus Haney).**

(1)  Impairment And Voting.

The Class 8 is impaired under this Plan.  Holders of an Allowed Claims in Class 8 are entitled to vote to accept or reject this Plan.

(2)  Allowance and Distribution.

The holders of Allowed Class 8 Claims shall be paid 100% of their Allowed Claims as

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

follows: Commencing in December of 2016 and through December 2019, holders of Allowed Class 8 Claims has be paid an annual payment of $25,000.00, which shall be paid Pro Rata to the holders of Allowed Class 8 Claims. Commencing in January 2020, and provided that the Allowed Class 6 Claim has been paid in full, the Debtor shall commit all Available Cash toward payment of Allowed Class 8 Claims until those claims have been paid in full.

### 9.    Class 9 Claims (the Allowed Unsecured Claim of Alpine)

#### (1)    Impairment and Voting.

Class 9 Claims are impaired under the Plan. As an insider of the Debtor, the holder of an Allowed Claim in Class 9 is not entitled to vote to accept or reject this Plan.

#### (2)    Allowance and Distribution

The holder of the Allowed Class 9 shall have an Allowed Claim in the amount $2,012,475.00.

The Allowed Class 9 Claim, shall be entitled to be paid in full. No payments shall be made on account of the Allowed Class 9 Claim until all Allowed Class 6 and 8 Claims have been paid in full in accordance with the Plan.

### 10.    Class 10 Claim (the Allowed Unsecured Claim of Marcus Haney)

#### (1)    Impairment and Voting.

Class 10 Claims are unimpaired under the Plan. Holders of Allowed Claims in Class 10 are not entitled to vote to accept or reject this Plan.

#### (2)    Allowance and Distribution

The holder of the Allowed Class 10 shall have an Allowed Claim in the amount as of the Petition Date of $63,670.00.

The Allowed Class 10 Claim arises out of a loan made to the Debtor to help fund the purchase of the Plaza Apartments. Under the terms of the agreement between the holder of the Allowed Class 10 Claim and the Debtor, the Debtor is required to make monthly installment payments of principal and interest in the amount of $2,283.63, commencing on October 5, 2001,

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION
1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 43 of 62

with the last payment coming due on September 5, 2016. The allowed Class 10 Claim shall continue to be paid in accordance with its original loan agreement.

### 11. Class 11 Interests

(1) <u>Impairment and Voting.</u>

Class 11 Interests are unimpaired under the Plan. Class 11 Interests retain their interest in the Reorganized Debtor.

# VIII.

# <u>MEANS FOR IMPLEMENTATION AND</u>

# <u>EXECUTION OF THE PLAN</u>

The Debtor and Guarantors anticipate that the Plan will be funded principally by a future net cash flow from the future operations of the Debtor, and in large part by either a sale or refinance of the Medical Building pursuant to the terms of the Plan. The Debtor anticipates that Effective Date payments required under the plan will in fact be funded by Cash available at the time of Confirmation. Debtors additionally believe that cash flow from the operation of its business and a sale of the Medical Building after the Debtors has had an opportunity to increase the cash flow from the Medical Building will be sufficient to fund the Plan's post-Effective Date financial obligations.

A key element of the Plan is to improve the overall occupancy rate of the Medical Building. The current usage of the Medical Building is at approximately 80%, and there remains approximately 6,600 square feet of space that remains available in the Medical Building. The Debtor's opinion is that it will be able to fully lease the remaining space of the Medical Building by the middle of 2015, and the utilization of that additional space should be able to generate approximately an additional $10,000.00 per month in gross rental income during the term of the Plan.

-44-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 44 of 62

The Debtor intends to request that the Court authorize the use of approximately $124,000.00 which is currently held by US Bank as cash collateral to fund necessary tenant improvements in connection with the leasing of the remaining space in the Medical Building.  In the event the Court does not authorize the use of US Bank's cash collateral, the Debtor believes that, through cash flow generated by its other operations, and contributions from the Guarantors, it would be able separately fund the expected tenant improvements.

The Debtor projects that the future rents generates by 142 N. 9th Street and the Sierra Manor property will be more than sufficient to continue to service the loans of the holders of the Allowed Class 3 and Class 5 Claims.

The Plaza Apartments are currently projected to operate at a small annual cash flow deficiency of between $2,000 to $4,000.00 per year, in part because of its debt service of a loan from Marcus Haney.  The Marcus Haney loan will be fully paid in September of 2016, and thereafter Debtor that the Place Apartments will also operate on a positive cash flow basis.

The Debtors will fund the distributions to the Allowed Class 6 Claim through a combination of the continued operation of the Medical Building, and a subsequent sale or refinance of the Building on or before the maturity date of the obligations as provided for under the Plan. The Plan proposed initial monthly payments of either $39,000.00 per month to the holder Allowed Class 6 Claim during 2015, and increasing to $41,000.00 per month for 2016, 2017, and 2018, with those payments being applied to both principal and interest as described in the treatment of the Class 6 Claim above.  As evidenced by the 5 year cash flow projections based upon the existing and historical gross monthly rental income, operations of the Medical Building alone are sufficient to service the $39,000.00 monthly payment.  The Plan contemplates that the Debtor will fully lease the remaining space in the Medical Building during the first twelve months after Confirmation, and thereby be able to increase the monthly debt service to $41,000.00.

Finally, on or before the maturity date of December 31, 2018, for the Allowed Class 6 Claim under the terms of the Plan, the Debtor shall sell or refinance the Medical Building for an amount that will, at a minimum, be sufficient to pay the balloon owed on the Class 6 Claim.

-45-

Without any tenant improvements to increase revenues, the Medical Building projected annual average net revenue would be $473,273.20. Assuming a 10% cap rate, Debtor anticipates being able to sell the Medical Building for at least $4.7 million. With tenant improvement to increase the cash flow, Debtor projects an average annual net revenue of $531,832.00, and again assuming a 10% cap rate, would project to a reasonable sale price of $5.3 million for the Medical Building which Debtor believes would be sufficient to retire the balloon owed to the Allowed Class 6 Claim without the need to liquidate additional collateral.

Additionally, as evidenced by the Budget Projections attached as Exhibit "4", the Debtor expects its continued operations will allow it to operate from a positive cash position. To the extent there is Available Cash during the administration of the Case, the Debtor may use such Available Cash to make additional principal payments to the Class 6 Claim, or to make additional payments to the Allowed Class 8 Claims. Except as provided for the Class 10 Claim and the compensation to be paid to Roger Haney, no Available Cash shall be used to make any distribution to insiders, affiliates, or shareholders.

### A. Projections of Future Cash Flow.

Attached hereto as Exhibit "4" are the Projections prepared by the Debtor, which set forth the Debtor's estimate of its anticipated cash flow for the term of the Plan. Projections of anticipated cash flow are based primarily upon the historical earnings of the Debtor and the Debtor's historical expenses. The Projections have not been subject to review and a certification by any independent accountants. Although the Debtor has devoted considerable time to the development of the Projections and believes that the Projections represent fairly the projected future cash flow of the business, care should be taken in analyzing the Projections as no guarantee exists that the Projections can be met by the Debtor.

THE PROJECTIONS SET FORTH IN THIS DISCLOSURE STATEMENT REPRESENT A PREDICTION OF FUTURE EVENTS BASED UPON CERTAIN ASSUMPTIONS SET FORTH WITH SUCH PROJECTIONS. THESE FUTURE EVENTS MAY OR MAY NOT OCCUR, AND THE PROJECTIONS MAY NOT BE RELIED UPON AS A GUARANTEE OR

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 46 of 62

OTHER ASSURANCE OF THE ACTUAL RESULTS WHICH WILL OCCUR. BECAUSE OF THE UNCERTAINTIES INHERENT IN PREDICTIONS OF FUTURE EVENTS, THE DEBTOR'S ACTUAL CASH FLOW MAY WELL BE DIFFERENT FROM THAT PREDICTED, AND SUCH DIFFERENCE MAY BE MATERIAL AND ADVERSE TO THE INTERESTS OF THE CREDITORS.

The Projections are intended to assess the future cash flow available to the Debtor for making the distributions required by the Plan. Significant assumptions underlying the financial projections include the following:

1. **Effective Date of the Plan.**

For the purpose of the Projections, the Debtor estimates that the Confirmation Date will occur on or about December 18, 2014 and, hence, that the Effective Date will occur on or before February 18, 2015.

2. **Earnings Generated by the Business.**

The Debtor's projection of the future earnings which will be generated by the business is derived from the pattern exhibited by the Debtor's business operations during the administration of the Case, the Debtors revenues based on the historical operation of the Medical Building prior to the appointment of the Receiver, and by the Debtor's estimate of the revenue which the Debtor's business operations will generate after the Confirmation Date. Revenues in the projections assume that the Debtor will be able to fully lease the remaining space in the Medical Building by June of 2015.

**B. Funding of Distributions Required on Effective Date.**

In order to emerge from Chapter 11, the Debtor must have Cash sufficient to fund the payment of all of the Allowed Administrative Claims and the Allowed Priority Claims, as well as being able to make the initial distributions proposed to the Allowed Class 3, 4, 5, 6, 7 and 8 Claims

The Debtor estimates that, on or by the Effective Date, it will have to pay no more than the following approximate amounts:

United States Trustee     $4,875.00

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

| | | |
|---|---|---|
| Administrative Claims | | $25,000.00 |
| Unclassified Tax Claims | | $0.00 |
| Class 1 | | $0.00 |
| Class 2 (Priority Claims other than taxes | | $0.00 |
| Class 3 (Key Bank) | | $12,986.00 |
| Class 4 (Chase – Plaza) | | $15,000.00 |
| Class 5 (Chase – Sierra Manor) | | $20,000.00 |
| Class 6 (US Bank) | | $39,000.00 |
| Class 7 (Alpine) | | $0.00 |
| Class 8 (Huff/Grover) | | $0.00 |
| Class 9 (Marcus Haney) | | $2,300.00 |
| Class 10 (Alpine) | | $0.00 |
| Class 11 (Shareholders) | | $0.00 |
| | TOTAL | $99,161.00 |

The Debtor and The Debtor intend to utilize a funds from operations of its business to make the foregoing payments. As evidenced by the projection in Exhibit "4", payments of the Administrative Claims have been budget for, and the Projections also provide that payments to Classes 3, 4, 5, 6, and 9 will be made out of cash flow from operations.

**C.** **Funding of Ongoing Distributions Required by the Plan.**

As set forth in sections A and C above, the Debtors intend to utilize a combination of revenues and proceeds from the sale of assets generated to fund the ongoing distributions required by the Plan.

**IX.**

**LIQUIDATION ALTERNATIVE TO THE PLAN**

The Code requires that, for a Chapter 11 plan to be confirmed, a debtor must demonstrate that a plan will afford the holders of allowed claims in an impaired class as much as they would receive or retain if the debtor's assets were liquidated under Chapter 7 of the Code. The liquidation analysis is based upon the most current financial information available to the Debtor as of the date of the preparation of the liquidation analysis, September 23, 2014.

Under the Plan, Unsecured Claims which are included in Classes 8 are being paid their Allowed Claims in full. The holders of the Allowed Class 9 and 10 unsecured claims will also be

-48-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION
1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 48 of 62

paid their allowed claim in full. Accordingly, all Unsecured Creditors provided for under the Plan will be paid 100% of their Allowed Claims, unless they have otherwise consented to a less favorable treatment which would allow for the separate classification of those Claims being paid less than 100% of their Allowed Claims.

The Debtor believes that if it were liquidated in a Chapter 7, while a trustee would likely continue to operate each of the individual properties, the Debtor does not believe that a trustee would liquidate the Debtors entire operation as a going concern.

Additionally, all unsecured claims would be lumped together, so that any deficiency claim on account of US Bank's claim in the Case would be treated the same along with the Claims of Huff, Grover, and the Allowed deficiency Claim of Alpine. Accordingly, the pool of unsecured claims in a Chapter 7 would be expected to be:

| Creditor | Amount |
|----------|--------|
| US Bank | $1,171,358.80 |
| Huff | $643,584.11 |
| Grover | $140,000.00 |
| Alpine | $2,303,638.61[9] |
| Marcus Haney | $47,573.85 |
| Total | $4,306,155.37 |

As evidenced by Exhibit "5", in the event of a Chapter 7, based upon 1) updated valuations based upon the Debtors opinion as to the current value of the Debtors real properties other than the Medical Building; 2) secured debt outstanding as of August 31, 204, and 3) assuming a 9.0% cost of sale and a Chapter 7 trustee fee, the Debtor's properties may be able to generate a total of $459,885.43 for payment of unsecured claims in a Chapter 7.

In terms of personal property, a copy of the Debtor's excerpted balance as of August 31,

---

[9] As the lien granted to Alpine occurred within twelve months prior to the filing of the case, a Chapter 7 trustee would be able to avoid the lien as preferential.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

2014 is attached hereto as part of Exhibit "5". The balance sheet disclosed total cash of $201,385.01, of approximately $142,060.15 would be US Bank's cash collateral, leaving a balance of $59,324.86, which is cash collateral for Chase and Berkadia. Assuming a liquidation of Chase and Berkadia's collateral generates sufficient funds to pay those claim, the $59,324.86 could also potentially be made available to general unsecured claims, less an additional Ch. 7 trustee fee of $2,966.24.

The Debtor also has $1,437,443.57 in pre-petition notes payables scheduled as current assets, of which approximately 1.3 million are notes receivables from the Equity Holders of the Debtor. The Debtor believes that these note receivables would not be collectible in full.

However, assuming even assuming that they could be collected in full, again after the minimal Chapter 7 trustee fee of $51,512.34[10] the total net proceeds in a Chapter 7 would be notes along with generate, with the Parking Lot proceeds would generate a total of approximately $1.5 million. Based on total projected unsecured claims in a Chapter 7, Unsecured Claims of the Debtor would appear likely to receive not more than approximately 42 cents on the dollar.

Since the Plan provides that All Allowed Unsecured Claims will 100% of their claims, the Plan satisfies the best interests of creditor test.

**X.**

**ANTICIPATED FUTURE FOR THE REORGANIZED DEBTOR**

The Reorganized Debtor intends to continue to operate its business in accordance with the terms of the plan.

**XI.**

**MANAGEMENT AND COMPENSATION**

Upon confirmation, the Reorganized Debtor will continue to employ Management to perform the day to day management of the Debtor's business. The Debtor will continue to pay Roger Haney a monthly salary of $3,000.00 per month.

---

10 The trustee would be entitled to 5.0% on $430,246.89 of the notes collected and 3.0% on the next 1.0 million for a additional fee of $51,512.34

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483                    1/20/2015 8:30 AM
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

Byron Haney will continue to act on behalf of the Debtor as the leasing agent for the Medical Building.  Dr. Haney will not be compensated for his services in this capacity.

## XII.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

To the extent that there are any other pre-petition leases or executor contracts which have not been expressly assumed under the terms of this Plan, or otherwise assumed pursuant to Court order prior to the Effective Date, all such leases shall be assumed by the Debtor as of the Effective Date of the Plan.

## XIII.

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

A.      **No Distribution Pending Allowance.**

Notwithstanding any other provision of this Plan, no distribution shall be made under this Plan on account of any Disputed Claim, unless and until such Claim becomes an Allowed Claim.

B.      **Resolution Of Disputed Claims.**

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing and except with respect to applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code, the Debtors and Reorganized Debtor shall have the right to make and file objections to Claims and shall serve a copy of each objection upon the holder of the Claim to which the objection is made, as soon as practicable, but in no event later than one hundred and twenty (120) days after the Confirmation Date.  From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Debtors elect to withdraw any such objection or the Debtors and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim without further approval of the Bankruptcy Court

-51-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483                                           1/20/2015 8:30 AM
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

14-00843-FLK11     Doc 261     Filed 01/20/15     Entered 01/20/15 11:13:58     Pg 51 of 62

C.    **Estimation.**

        The Debtors may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors have previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  On and after the Confirmation Date, Claims which have been estimated subsequently may be compromised, settled, withdrawn or otherwise resolved without further order of the Bankruptcy Court.

**XIV.    .**
**CONDITIONS PRECEDENT TO ACHIEVING**
**CONFIRMATION AND EFFECTIVE DATE OF PLAN**

        1.    On or before the Effective Date, the Reorganized Debtor will execute and record all necessary documents referred to herein.  Upon the failure of any party to execute or deliver or cancel any document as required under the Plan, the Reorganized Debtor, may, in its discretion, make application to the Court for entry of an Order which may then be filed, delivered or recorded as necessary or appropriate to effectuate the required transaction or complete the requirement under the Plan.

**XV.**
**VESTING OF PROPERTY**

        1.    Vesting of Property.  On the Effective Date, all property of the Estate, including but not limited to right, title and interest in any real property, personal property, contractual rights, Claims, demands, suits, remainder or reversionary interests and any other legal or equitable rights, Claims, demands, interests or remedies of the Estate shall, excluding property otherwise distributed

and Claims otherwise resolved under the Plan, be vested in the Reorganized Debtor.

## XVI.

## INTENT TO UTILIZE CRAMDOWN

In the event that the Debtor does not secure the acceptance of the Plan by each impaired Class of Claims or interests pursuant to Section 1129(a)(8) of the Code, the Debtor intends to seek confirmation of the Plan pursuant to Section 1129(b)(1) of the Code.

## XVII.

## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

The Bankruptcy Court, following confirmation of the Plan, shall retain jurisdiction over the Plan and over the Case and all other matters arising out of or relating to the Case or arising under the Bankruptcy Code to the full extent permitted by law and to the full extent necessary to carry out the purposes and intent of this Plan, including but not limited to the following:

A.     The classification of any Claim, the re-examination of Claims that have been Allowed for purposes of voting, and the determination of any objections that may be filed to Claims, except as to those Claims which are deemed Allowed under the Plan.  The failure of the Debtor to object to or re-examine any Claim for the purpose of voting shall not be deemed a waiver of the right of the Debtor to object to or re-examine all or part of any Claim.

B.     The liquidation of any Claim.

C.     The determination of all questions and disputes regarding title to assets at issue in the Case and the determination of all causes of action, controversies, disputes or conflicts arising in the Case or related to or arising under the Bankruptcy Code, whether or not subject to an action pending as of the Confirmation Date, including but not limited to any right of the Debtor to recover money or property pursuant to the provisions of the Bankruptcy Code or applicable nonbankruptcy law.

D.     The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in the Plan, Disclosure Statement or the Confirmation Order, as may be necessary to

-53-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION
1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 53 of 62

carry out the purposes and intent of the Plan.

       E.      Modification of the Plan after confirmation pursuant to the Plan, the Bankruptcy Code or the Bankruptcy Rules.

       F.      The enforcement, interpretation and implementation of the terms and conditions of the Plan and any instruments or documents created or issued under the Plan or evidencing the terms of the Plan.

       G.      Entry of any order, including an injunction necessary to enforce the right, title and interest of the Debtor to impose such limitations, restrictions, terms and conditions of such right, title and interest as the Bankruptcy Court may deem necessary.

       H.      The determination of any Claim for compensation and reimbursement of counsel for the Debtor or any other professional person entitled to priority under 11 U.S.C. § 507(a)(1).

       I.      Entry of any order, including an injunction necessary to enforce the right, title and interest of the Debtor and to impose such limitations, restrictions, terms and conditions of such right, title and interest as the Bankruptcy Court may deem necessary.

       J.      The determination of any Claim for compensation and reimbursement of counsel for the Debtor or any other professional person entitled to priority under 11 U.S.C. § 507(a)(1).

       K.      Entry of a final decree concluding and terminating the Case.

## XVIII.

## TAX CONSEQUENCES

### A.     Tax Information.

      ALL RECIPIENTS OF THIS DISCLOSURE STATEMENT MAY BE AFFECTED BY CERTAIN OF THE TAX RAMIFICATIONS AND THEREFORE ARE ENCOURAGED TO EACH OBTAIN ADVICE FROM THEIR OWN RESPECTIVE ATTORNEYS AND ACCOUNTANTS REGARDING THE PLAN. THE ATTORNEYS FOR THE DEBTOR HAVE NOT BEEN RETAINED TO PROVIDE AND ARE NOT PROVIDING ANY OPINION TO THE DEBTOR OR ANY OTHER PARTY AS TO THE TAX EFFECT OF THE PLAN. NEITHER

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

THE DEBTOR NOR GENERAL PARTNER NOR INDIVIDUALS AFFILIATED WITH THE DEBTOR NOR THE ATTORNEYS FOR THE DEBTOR OR FOR ANY OTHER ENTITY HAVE RENDERED ANY INDEPENDENT ADVICE WITH RESPECT TO ANY PARTICULAR CREDITOR AND/OR PARTNER OF THE DEBTOR WITH RESPECT TO THE PLAN.

Creditors who receive amounts less than their respective Allowed Claim may realize a loss. This depends upon whether or not such creditors previously recognized their claim as income, which may depend on whether or not such creditors were accrual or cash basis taxpayers. Since the Plan provides for a payment which is less than payment in full of the Allowed Claims, creditors may have a taxable loss which would be computed by the difference between the creditors' basis, which may be anywhere from zero (in which case the creditor may have income to the extent of any payment received) to the full amount of the claim, and the amount realized pursuant to the Plan payments to such unsecured creditor.

## XIX.

### PENDING LITIGATION

The initiation of the Debtors Chapter 11 proceedings gave rise to an automatic stay pursuant to Section 362 of the Bankruptcy Code, which effectively stayed any pending pre-petition litigation against the Debtor, and any litigation that could have been brought prior to the Petition Date. All Creditors and parties in interest holding pre-petition Claims against the Debtor were required to file those Claims by the Bar Date. To the extent that these Claims were not filed by the Bar Date, they are barred unless allowed by order of the Court, the terms of the Plan, or listed in the Debtor's schedules, unless listed as disputed, contingent or unliquidated.

During the pendency of their Chapter 11 proceedings, the Debtors have been reviewing and analyzing timely filed Claims to determine whether or not these Claims are valid, or whether they should be the subject of an objection. This analysis is ongoing, and the Debtors reserve the right to file objections to the Claims which have been filed in its proceeding on any appropriate grounds.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION
1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 55 of 62

Pursuant to the Debtor's Plan, the Debtors must file an objection to any disputed claim on or before the 120 days after the Confirmation Date. Any Claim as to which no objection has been filed as of said date, is deemed an Allowed Claim, unless the Debtor obtains an extension of the objection period.

## XX.
## AMENDMENTS TO LEGAL DOCUMENTS

As of the Effective Date of the Plan, all existing liens on property of the estate are modified, retained or extinguished as provided in the Plan..

## XXI.
## EFFECT OF CONFIRMATION OF PLAN

1. <u>Discharge</u>. The rights afforded in this Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor and the Debtor-in-Possession, or any of their assets or properties. Except as otherwise provided in this Plan or the Confirmation Order: (i) on the Effective Date, the Debtor shall be deemed discharged and released to the fullest extent permitted by Section 1141 of the Bankruptcy Code from all Claims, including, but not limited to, demands, liabilities, and Claims that arose before the Confirmation Date and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim based on such debt is allowed pursuant to Section 502 of the Bankruptcy Code or (c) the holder of a Claim based on such debt has accepted the Plan; and (ii) all Persons shall be precluded from asserting against Reorganized Debtor, its successors, or their assets or properties any other or further Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date. Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall act as a discharge of any and all Claims against and all debts and liabilities of the Debtor, as provided in Sections 524 and 1141 of the Bankruptcy Code, and such

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

discharge shall void any judgment against the Debtor or Reorganized Debtor at any time obtained to the extent that it relates to a Claim discharged.

2. _Injunction_. Except as otherwise provided in this Plan or the Confirmation Order, on and after the Effective Date, all Persons who have held, currently hold or may hold a debt or Claim discharged pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against any of the Debtor, Reorganized Debtor, their successors or their respective property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against any of the Debtor, Reorganized Debtor, their successors or their respective property; (3) creating, perfecting or enforcing any lien or encumbrance against any of the Debtor, Reorganized Debtor, their successors or their respective property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to any of the Debtor, Reorganized Debtor, their successors or their respective property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order. Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

3. Pursuant to Section 1123(b)(3)(B) of the Code, the Reorganized Debtor shall be designated as the representative of the Estate beginning on the Confirmation Date.

4. The provisions of the Plan shall be binding upon and inure to the benefit of the Debtor and any creditor or any respective transferee, assignee or successor, whether or not the claim of a creditor is impaired under the Plan, whether or not a creditor has accepted the Plan, and whether or not the Debtor has or intends to take certain actions or inactions in connection with this Case, the Plan and the Confirmation Order.

## XXII.
## MODIFICATION OF THE PLAN

The Debtor reserves all rights set forth in Section 1127 of the Code with respect to the modification of this Plan.

## XXIII.
## REQUEST FOR FINDING OF FAIR AND
## EQUITABLE TREATMENT TO IMPAIRED CLASSES

The Debtor hereby requests, pursuant to Section 1129 of the Code that this Court find that the provisions of the Plan provide for fair and equitable treatment to those claimants who are impaired under this Plan and who may elect not to accept this Plan, and that this Court confirm the Plan notwithstanding the requirements of Section 1129(a)(8) of the Code as to such claimants.

## XXIV.
## PROVISIONS FOR THE EXECUTION OF THE PLAN WHICH MAY AFFECT,
## ALTER OR MODIFY THE RIGHTS OF ALL CLASSES OR CLAIMANTS

1.      After the Effective Date of the Plan, the Reorganized Debtor shall continue its business and manage its affairs without the supervision of the Bankruptcy Court and may enter into such agreements and transfer, convey, encumber, use its assets as it deems appropriate under the circumstances and may enter into such agreements and transfer, convey, encumber, use, and lease property of the Estate as it deems appropriate under the circumstances, without seeking the approval from the Bankruptcy Court, but nothing in this provision shall impair the liens and encumbrances which a holder has retained pursuant to the express terms of the Plan.

2.      Except as otherwise provided in the Plan, the distributions to holders of Claims described in this Plan are minimum distributions only, and the Reorganized Debtor, in its sole discretion, shall have the right, at all times, to make full or partial prepayments to any entity without penalty.  Where the Plan calls for a number of equal payments, the amount of the payment shall be calculated assuming the payments are made on the first of the month when due and include interest amortized at the applicable rate. Prepayments of payments may, therefore, reduce the final amount or reduce the number of payments otherwise due under the Plan, and late payments may increase the number of payments otherwise required by the Plan.

3.      Upon the Confirmation Date, any legal actions which are pending in regard to the foreclosure of any lien or encumbrances against any property of the Estate or of the Debtor shall be

-58-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 58 of 62

permanently enjoined.

        4.      Upon payment of sums to which a creditor is entitled under the Plan, all claims of any creditor, or of claims against the Debtor, arising prior to the confirmation of the Plan against the Debtor, shall be wholly released and discharged, and any actions or proceedings against any employees, agents, servants, guarantors, or partners of the Debtor, including any judgments and judgment liens, shall be terminated, relinquished, and released.

        5.      Debtor's obligation to make any payment for any administrative obligation of the estate or any payment under this Plan may be discharged to the extent that such payment is made by any entity or from any property.  If the entity makes a payment from a source other than property of the Estate or proceeds of property of the Estate, the Reorganized Debtor, may, but shall not be required to, reimburse the entity and whether or not such reimbursement is made, the payment shall be treated the same as a payment to that creditor for the purposes of the Plan.

## XXV.
## MISCELLANEOUS PROVISIONS

### A.    Revocation of the Plan.

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor withdraws the Plan, then the Plan shall be null and void, and nothing contained in the Plan shall:  (1) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor; or (2) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

### B.    Successors and Assigns.

The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executory, administrator, successor or assign of such entity.

### C.    Saturday, Sunday or Legal Holiday.

If any payment or act under the Plan is required to be made or performed on a date that is

-59-

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11   Doc 261   Filed 01/20/15   Entered 01/20/15 11:13:58   Pg 59 of 62

not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### D.  Post-Effective Date Effect of Evidence of Claims.

Notes and other evidences of Claims against the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan.

### E.  Headings.

The headings used in the Plan are inserted for convenience only and neither constitutes a portion of the Plan nor in any manner affects the provisions of the Plan.

### F.  Governing Law.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules) or (ii) an express choice of law provision in any agreement, contract, instrument, or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Washington without giving effect to the principles of conflict of laws thereof.

### G.  No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any manner set forth herein including, without limitation, liability on any Claim or the propriety of any Claims classification.

## XXVI.
## REQUEST FOR CONFIRMATION

The materials provided in this Disclosure Statement are intended to assist you in voting on the Plan in an informed fashion.  If the Plan is confirmed, you will be bound by its terms.

Debtor hereby requests entry of an order confirming the Plan as having satisfied the requirements of 11 U.S.C. § 1129.  Debtor further requests that the Bankruptcy Court make such findings as may be necessary to implement the Plan.

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

DATED at Modesto, California this __ day of January 2015

RIVER-BLUFF ENTERPRISES, INC.

_____

By: Roger Haney, President

IN RE RIVER BLUFF ENTERPRISES, INC.; CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF
REORGANIZATION

1/20/2015 8:30 AM

14-00843-FLK11    Doc 261    Filed 01/20/15    Entered 01/20/15 11:13:58    Pg 61 of 62

1

DATED at Modesto, California this *13* day of January 2015

RIVER-BLUFF ENTERPRISES, INC.

2

3

*Roger Haney, President*

By: Roger Haney, President

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-61-

IN RE RIVER BLUFF ENTERPRISES, INC.: CASE . NO. 14-00483
DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF

01/13/2015 8:52 PM